Dr. H. M. DON et al., Plaintiffs-Appellants,

v.

**OKMULGEE MEMORIAL HOSPITAL, a charitable institution, et al.,**
**Defendants-Appellees.**

No. 263–70.

United States Court of Appeals,
Tenth Circuit.

May 11, 1971.

Gerald D. Swanson, Tulsa, Okl. (Swanson & Montgomery, Tulsa, Okl., on the brief), for plaintiffs-appellants.

John R. Richards, Tulsa, Okl. (Houston, Klein & Davidson, Tulsa, Okl., on the brief), and Dale F. Rainey, Okmulgee, Okl. (Rainey & Barksdale, Okmulgee, Okl., on the brief), for Okmulgee Memorial Hospital, Okmulgee Memorial Hospital Authority, L. K. Covelle, Don A. Thompson, R. E. Ishmael, Margaret Uri, Bill Forman, Bill Thomas, L. D. Panchot and Dr. William M. Haynes.

Alfred B. Knight, Knight, Wilburn & Wagner, Tulsa, Okl., for Dr. Holice B. Powell, Dr. Joel W. Anderson, Dr. Jack P. Myers and Dr. Arthur Buell.

Joseph A. Sharp, Best, Sharp, Thomas & Glass, Tulsa, Okl., for Dr. R. D. Miller, R. L. Alexander, Floyd Hubbard and H. E. Gill.

Before BREITENSTEIN and McWILLIAMS, Circuit Judges, and DOYLE, District Judge.

WILLIAM E. DOYLE, District Judge.

The plaintiff, Doctor Don, and a number of his patients filed an action against the defendant hospital, the Board of Trustees thereof and also members of the medical staff of the hospital complaining that his and his patients' rights had been violated as a result of the action of the Board of Trustees denying him admission to the staff of the Okmulgee Hospital (in Okmulgee, Oklahoma). The trial court dismissed his suit for damages and discharged the jury. Following a consideration of the entire evidence the court entered findings of fact and judgment denying the claim for injunction and dismissing this cause of action also. Plaintiffs have appealed both decisions.

## I

### JURISDICTION

Plaintiffs claim injunctive relief and damages based upon alleged violations by the defendants of the provisions and requirements of 42 U.S.C. §§ 291, 1983, 1985(3), 1986, 2000a, 2000a–1, 2000a–2, 2000a–3, 2000d, the Fifth and Fourteenth Amendments to the Constitution of the United States and the Civil Rights Act of 1964.

42 U.S.C. § 291 et seq., known as the Hill-Burton Act, authorizes and sets forth procedures for providing federal assistance for state programs for the construction and modernization of public medical facilities. The Okmulgee Hospital was the recipient of Hill-Burton funds. While receipt of funds under the Act may be significant in determining the existence of state action in acts alleged to have violated a person's constitutional rights, the Act itself creates no personal rights or causes of action as such, nor does it confer jurisdiction on federal courts of controversies involving civil or other personal rights. *See* Rogers v. Provident Hospital, 241 F.Supp. 633 (D.C.Ill.1965); Stanturf v. Sipes, 224 F.Supp. 883 (D.C.Mo.1963), aff'd 8 Cir., 335 F.2d 224, cert. denied, 379 U.S. 977, 85 S.Ct. 676, 13 L.Ed.2d 567 (1965).

The provisions of the Public Accommodations Act, 42 U.S.C. §§ 2000a, 2000a–1, 2000a–2, 2000a–3, and 2000d, all deal with discrimination or segregation on the ground of race, color, religion, or national origin. No such discrimination is alleged in the complaint (Dr. Don is white), and therefore the suit cannot be considered one to redress deprivation of any right secured by the mentioned provisions.

As to the alleged violation of 42 U.S.C. § 1986, it is nowhere alleged in the complaint that any of the defendants knowingly neglected or refused to prevent the alleged violation of 42 U.S.C. § 1985. And in any event, the trial court held that there was not sufficient evidence to sustain a finding by the jury that a conspiracy existed among the defendants (to support the § 1985 cause of action), and this ruling is not asserted as error on this appeal.

The remaining grounds asserted for relief—42 U.S.C. § 1983 and the Fifth

and Fourteenth Amendments to the United States Constitution—all involve essentially alleged deprivations of equal protection and due process of law. Although jurisdiction of these issues may be somewhat questionable in light of plaintiff's failure to establish violation of his constitutional rights (in this case the alleged violation of plaintiff's due process and equal protection rights), jurisdiction may nevertheless be based on 28 U.S.C. § 1343(3).

The trial court applying state law found the hospital to be public in nature and hence concluded that its trustees were acting under color of state law. This furnished sufficient justification for the trial court's entertaining the case on the merits, and its conclusion in this regard is not disputed. However, we have reviewed the evidence in search of some substance to support the plaintiff's constitutional rights claims.

## II

### SUMMARY OF FACTUAL BACKGROUND

Dr. Don submitted his application for membership on the medical staff of the Okmulgee Hospital on July 31, 1967. At this time, a new hospital was in the process of being built. He was at the time a member of the staff of Doctor's Hospital which was owned and operated by five doctors of osteopathy in Okmulgee. This latter hospital closed on October 1, 1968. This July 31, 1967 application was rejected by the medical staff of the Hospital due to the fact that Don was not a medical doctor. The by-laws at the time required graduation from a recognized medical school and membership in the local medical society. Then in December 1967, the medical

staff moved to reject the application on another ground, namely, "unsatisfactory results of investigation." The Board of Trustees adopted the recommendation of the medical staff. This was not, however, the end of the matter. Don immediately took issue with this action, and the matter became reopened. Thereafter, the matter was pending for more than eight months and was finally denied in October 1968. Meanwhile, the by-laws were changed so as to open the medical staff to osteopaths; at the same time a new requirement, one year of residency as well as one year of internship was adopted. During this interim the Doctors Hospital was closed and the five osteopaths who had operated it were admitted to the staff of the defendant hospital. An extensive investigation of Dr. Don was also carried out during this period.[1] Then on October 15, 1968, a meeting was held between Dr. Don, his attorney, and the Board of Trustees at which time the matter was discussed, and following the meeting the application was again denied. After a subsequent consideration a *final* denial was issued, and the present action ensued.

The trial court found that the Board of Trustees in considering the applications, including that of Dr. Don, ignored the requirement of one year residency and considered instead the nature and extent of experience in practice. The court also found that the residency requirement was adopted as part of an effort of the staff and trustees to improve the standards of the hospital and further found that the action was not aimed at Don. The court noted that in its opinion this would not have been a valid reason "for refusing to recommend the applying doctors including Dr. Don."[2]

1. Requests of Dr. Don were made for additional information, but these were largely unproductive, and finally the Board in an effort to fill in the blank places in Dr. Don's background employed a private detective.

2. The court also observed:
   When the board of trustees decided, therefore, to waive the requirement and

admit doctors of osteopathy who had not had the year of residency training, it was necessary in the discharge of the board's obligation to the public that it have reasonable grounds for believing the doctors were qualified without the residency to render competent medical attention to patients in the hospital, and would do so. In making their de-

The trial court upheld the action of the Board of Trustees on the basis of the evidence establishing that he was personally unstable. It was the fact that he had moved frequently, had suffered financial losses, "was seeing on a daily basis an excessively large number of patients, amounting in their opinion to practicing osteopathy on a mass production basis" possibly for the purpose of recouping on his business losses, had had a quarrel with a partner which had resulted in litigation, the fact that he had had difficulty with the authorities in connection with his fees under the Medicare program, and finally, the fact that his application was lacking in factual information.

In the words of the trial court

* * * the conclusion reached by the board of trustees of the hospital was reasonable and the action taken in rejecting Dr. Don's application for membership on the hospital staff constituted a valid exercise of the board's authority and responsibility with respect to providing the hospital with a staff of dependable as well as qualified doctors. The board's action in the matter was not in the opinion of the court motivated by any discriminatory attitude or purpose to deny Dr. Don membership on the hospital staff for any reason other than what the board considered to be in the best interests of the hospital and in the discharge of its obligation to the public.

■ There was a good deal of other evidence offered by defendants concerning events in 1969. This was after the decision was rendered by the defendant. It had to do with the absence of Dr. Don from Okmulgee during 1969. During this time he was in Iowa. He suffered a nervous breakdown and was under the care of a psychiatrist. His nurse took care of the office and according to

the evidence administered shots and did other things which are generally considered the practice of medicine. The trial court properly disregarded all of this, limiting its decision to the matters which were before the Board of Trustees.

### III

### THE DUE PROCESS-EQUAL PROTECTION CONTENTION

Appellant's main emphasis is first that he was denied a hearing; that he was not furnished reasons for denial; and further that there was a failure to check out his references. He further argues that the record reveals bad faith on the part of the Board of Trustees—a determination to refuse his application.

It is true that a formal judicial or quasi-judicial hearing was not held. The only confrontation which resembled it was that which was held in October 1968 at which the Board met with Dr. Don and his lawyer to discuss the matter. It is a fact that the Board had investigated and studied the matter for some eight months prior thereto and had eliminated the by-law limiting staff privileges to graduates of medical schools. The Board had also overridden the medical staff on the matter of requiring one year of residency. Hence, it is not possible to say that the effort of the Board was not a good faith one which was carried out in the public interest.

■ We do not question the proposition that publicly funded hospitals are subject to the limitations of the Fourteenth Amendment in admitting staff members. Thus, in Meredith v. Allen County War Memorial Hospital Commission, 397 F.2d 33 (6th Cir. 1968), wherein the plaintiff was dismissed from a medical staff on grounds of general uncooperativeness, refusal to handle emergency cases, and due to dismissal from various medical associations, it was held

cision to override the medical staff, the members of the board relied on their personal knowledge of and acquaintance with those they admitted, all of whom were well established and respected cit-

izens of the City of Okmulgee. The board reached a different conclusion as to Dr. Don, about whom they learned mainly through their inquiries * * *.

that his complaint stated a claim for relief. The allegation was that the hospital commission and its members had conspired to and in fact had denied plaintiff his constitutional rights in violation of the Civil Rights Act of 1871.[3]

The law is not clear as to the type and extent of administrative hearing necessary to satisfy procedural due process where the matter before the Board is admission to the staff. Where the proceedings seek suspension or expulsion from the staff, it has been held that an evidentiary hearing must be held at some point in the administrative process. Citta v. Delaware Valley Hospital, 313 F.Supp. 301 (E.D.Pa.1970).

■ The Court in the *Citta* case went on to say that this "does not compel the conclusion that a hearing must be given *before* the restrictions are imposed." It was thus held that summary action is permissible so long as an adjudicatory hearing is given within a reasonable time. When a man is being suspended or ousted he is being deprived of a status which is more or less vested, whereas when as here he is applying and does not satisfy the requirements (one year of residence) and seeks a waiver, the formal adversary hearing is less important. The applicant is though entitled to overall fairness and a good faith consideration of his qualifications and background. Cf. 1 Davis Administrative Law Treatise Sec. 7.04, p. 422 and Goldsmith v. United States Board of Tax Appeals, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494.

The formal adversary hearing is, under some circumstances at least, dispensable. *Id.* In the *Goldsmith* case the petitioner, a Certified Public Accountant, sought admission to the rolls of the United States Board of Tax Appeals. In that case, unlike the case at bar, he fulfilled the formal requirements. Nevertheless, the Board denied his application, and the Supreme Court held that he was there entitled to have a hearing constituting due process. The Court went on to state that he was not entitled to the relief that he sought, namely, an order compelling the Board to enroll him on the list of practitioners. The relief demanded was denied on the ground that the most that he could claim and receive was an order compelling the Board to grant him a hearing. The case is different from the case at bar, but nevertheless serves as an authoritative comparison.

The Court, through Chief Justice Taft, said:

The petitioner as an applicant for admission to practice was, therefore, entitled to demand from the board the right to be heard on the charges against him upon which the board has denied him admission. But he made no demand of this kind. Instead of doing so, he filed this petition in mandamus in which he asked for a writ to compel the board summarily to enroll him in the list of practitioners, and to enjoin it from interfering with his representing clients before it. He was not entitled to this on his petition. Until he had sought a hearing from the board, and been denied it, he could not appeal to the courts for any remedy and certainly not for mandamus to compel enrollment. Nor was there anything in the answer, reply or demurrer which placed him in any more favorable attitude for asking the writ.

3. The Court said:

Defendants are correct in asserting that plaintiff has no constitutional right to practice his profession at a public facility. Hayman v. City of Galveston, 273 U.S. 414, 47 S.Ct. 363, 71 L.Ed. 714 (1927); accord, Adler v. Board of Educ., 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517 (1952). The constitutional requirements of due process and equal protection, however, place limitations on the manner in which one can be excluded from such practice. See Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Slochower v. Bd. of Higher Educ., 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956).

It is our conclusion that there has not been a violation of due process either substantive or procedural.

Nor do we perceive any violation of the Equal Protection Clause. This is not a situation such as that which obtained in Foster v. Mobile County Hospital Board, 398 F.2d 227 (4th Cir. 1968), wherein plaintiff, a Negro physician, sought admission to the medical staff of the defendant hospital. There was in that case a requirement of membership in the county medical society. In discussing the Equal Protection requirement the court said:

> That such state action demands equal treatment of members of the same class (i. e. physicians) is a fundamental requisite of equal protection rights. Any distinction between such members must be on a reasonable basis. Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965). Moreover the distinctions which were drawn must in some way relate to the purpose of the classification made. Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966); Rinaldi v. Yaeger, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); McLaughlin v. State of Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed. 2d 222 (1964); Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957).

The court went on to find that the requirement based on membership in the county medical society was arbitrary and unreasonable.

In the case at bar we do not find that osteopathic physicians as a class were denied admittance, and we do not agree that every osteopath was entitled to admission without examination of his individual background.

## IV

### THE RULING ON THE ACTION FOR DAMAGES

The reason for the trial court's judgment of dismissal and the release of the jury at the close of the plaintiff's evidence was the insufficiency of proof to establish a conspiracy and, secondly, the lack of evidence to establish any damages. Apparently the case was tried on the theory of conspiracy between the several defendants. This theory was, however, abandoned during the trial. Furthermore, while the plaintiff may well have suffered monetary damages as a result of the denial of his application, the evidence as to this was sparse and unsatisfactory. It is unnecessary, however, to decide whether or not there was some evidence of damage in view of our holding that the plaintiff wholly failed to establish *liability*. The plaintiff failed to prove a violation of 42 U.S.C. § 1983. Hence, his damage claim failed on this account. The issue of legal sufficiency or insufficiency of the proof of damages becomes superfluous.

Finally, no valid claim on behalf of the patients for either damages or injunctive or mandamus relief was shown.

Accordingly, the judgment is affirmed.