**William A. BARRETT, M.D., Plaintiff,**

v.

**UNITED HOSPITAL et al.,
Defendants.**

**No. 73 Civ. 1716.**

United States District Court,
S. D. New York.

May 23, 1974.

plaintiff physician alleges violations of the First, Fifth, Eighth, Ninth and Fourteenth Amendments of the United States Constitution and of the Civil Rights Act of 1871 [1] by the defendant Hospital, its Board of Directors, employees, committees and staff members. All the defendants now move to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. In effect, both of these motions present the identical contention that the absence of "state action" in the violations alleged by plaintiff in his complaint is fatal to his cause of action.

Levy, Gutman, Goldberg & Kaplan, New York City (Jeremiah S. Gutman, Eugene N. Harley, Donald L. Doernberg, New York City, of counsel), for plaintiff.

Hayt, Hayt, Tolmach & Landau, Great Neck, N. Y. (Robert Andrew Wild, Great Neck, N. Y., of counsel), for defendants United Hospital, Stolnacke, Johnson, Jennings, Steers, Rees, Gantz, Lombard, Gile, Dammon, Lane, Kelsey, Marx, Mosbacher, Shattuck, Hallock and Dale.

Clark, Gagliardi & Miller, White Plains, N. Y. (Lawrence T. D'Aloise, Jr., White Plains, N. Y., of counsel), for defendants Grant, Sudbay, Wasserman, Kaufman, Alexander, Balchunas, Seanor, Delaney, Felch, Halpern, Neschis, Schwartzman, Silberstein, Wilson, Drago, Haggerty, Jensen, Lever, Roth, Dee and Shragowitz.

OPINION

BAUMAN, District Judge.

In this action for declaratory, injunctive, mandamus and monetary relief, the

I.

For purposes of this motion, plaintiff's version of the facts are taken as true.[2]

The plaintiff is a physician who, for almost twenty years, was a member of the staff of United Hospital, a private hospital located in Port Chester, New York. In 1966, he was indicted and charged with the crime of criminal abortion.[3] Upon his subsequent plea of guilty to assault in satisfaction of all charges, plaintiff's license to practice medicine in New York was revoked as were all his staff privileges at the defendant Hospital.[4] On February 4, 1971, the Commissioner of Education restored plaintiff's license to practice medicine within the state effective July first of that year. Thereupon plaintiff immediately applied for the restoration of his privileges at United Hospital.

The by-laws of the Hospital in effect at that time, relating to appointments to the Medical Staff, prescribed the following procedure: Applications are considered first by a "Credentials Committee" which makes a recommendation to a

---

1. 42 U.S.C. Sections 1983, 1985 and 1986. The jurisdiction of the court is asserted under 28 U.S.C. Sections 1331, 1343 and 1361.

2. Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967); Murray v. City of Milford, 380 F.2d 468 (2d Cir. 1967).

3. Section 125.40 et seq. of the Penal Law, McKinney's Consol.Laws, c. 40, in effect in New York at that time.

4. In September of 1968, the Board of Trustees of United Hospital voted not to reappoint plaintiff to his position on the Medical Staff.

"Medical Council of the Medical Staff" which in turn makes a recommendation to the Board of Trustees. If the application is denied, the applicant may avail himself of the right to a hearing before a "Joint Conference Committee" which, following the hearing, makes its recommendations to the Board of Trustees.

Following the denial of his application plaintiff requested a formal hearing which was finally held on February 16, 1972.[5] The hearing resulted in an affirmation of the prior actions of the various committees and a recommendation to the Board of Trustees that plaintiff be denied staff privileges. The Board of Trustees thereafter accepted this recommendation and plaintiff was so advised on May 3, 1972. Almost one year later the complaint was filed in the instant case, charging that the defendants, as members of the various committees which considered and passed upon Dr Barrett's application,[6] had violated his civil rights and various constitutional protections in denying him admittance to the Hospital staff. Specifically the complaint alleges:

(1) That the hearing procedures followed by the Joint Conference Committee denied plaintiff due process (¶ 61).

(2) That the defendants had created a scheme to prevent plaintiff from being granted privileges at either United Hospital or at other hospitals in neighboring areas (¶ 62).

(3) That the denial of staff privileges was without basis in law or fact, was beyond defendants' authority, and was arbitrary, capricious, vindictive and an abuse of discretion (¶ 64).

(4) That certain of the defendants had conspired to destroy plaintiff's reputation and professional practice (¶ 69).

(5) That certain of the defendants had communicated false and malicious statements concerning plaintiff to administrators and professional staff at other hospitals and had used influence and pressure to cause patients, hospitals and other colleagues to shun and exclude plaintiff (¶ 70).

Based on these specific allegations plaintiff contends that his constitutional rights have been violated in that he has been prevented from associating freely[7] and privately[8] with his patients and thereby has been deprived of due process[9] and equal protection[10] and subjected to cruel and unusual punishment.[11] Therefore, plaintiff argues, defendants' activities have deprived him of "rights, privileges [and] immunities secured by the Constitution" in violation of Title 42 U.S.C. §§ 1983, 1985 and 1986.

The complaint before me seeks an order directing the defendants to admit plaintiff to the Medical Staff of United Hospital, an injunction restraining the defendants from refusing to grant him privileges at the Hospital as well as from taking any action to prevent him from being granted professional privileges at other hospitals and money damages.

II.

Defendants have moved to dismiss the complaint on the grounds that it fails to state a cause of action and that there is

---

5. Plaintiff's present counsel, Mr. Gutman, was present at the hearing.

6. The defendants, in addition to the Hospital, are the members of its "Credentials Committee," "Medical Council," "Joint Conference Committee," and Board of Trustees as well as various other staff physicians and surgeons.

7. First and Fourteenth Amendments of the U. S. Constitution.

8. Ninth and Fourteenth Amendments of the U. S. Constitution.

9. Fifth and Fourteenth Amendments of the U. S. Constitution.

10. Fourteenth Amendment of the U. S. Constitution.

11. Eighth and Fourteenth Amendments of the U. S. Constitution.

no subject matter jurisdiction.[12] Before proceeding to an examination of the merits of these contentions there is a procedural question which must be disposed of.

Defendants have supported their motions to dismiss by affidavits and therefore purport to come within the last sentence of Rule 12(b) which provides that where "matters outside the pleading" are considered by the court such motions shall be treated as motions for summary judgment.[13] Plaintiff argues that these affidavits are "argumentative" and suggests that they be treated as memoranda rather than as having presented "matters outside the pleading." This I decline to do. While it is true that Rule 12(b) allows the court the option of disregarding the extrinsic material and deciding the motion on the pleadings, where, as here, factual matters are presented in the affidavits which are relied on by the court, the better practice is to treat the motion as one for summary judgment. Thompson v. New York Central Railroad Company, 361 F.2d 137 (2d Cir 1966). Accordingly the motion before me will be disposed of as provided in Rule 56.[14]

### III.

This brings me to the core of the case before the court: the presence or absence of "state action" or "action taken under color of state law". Although the various constitutional and statutory claims presented by plaintiff require somewhat different treatment, the majority of them are completely dependent upon a finding of the requisite state involvement.[15] The only major ex-

12. In view of my disposition of the case I need not reach defendants' allegation that the various specific causes of action are barred by the statute of limitations.

13. The last sentence of Rule 12(b) provides: "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

14. All the parties involved in this case were duly informed of the court's decision to treat the motion as one for summary judgment and were given a reasonable opportunity, namely ten days, to present all material facts made pertinent to such motion by Rule 56. The decision to treat defendants' motion under Rule 56 makes it unnecessary to determine whether 12(b)(1) or 12(b)(6) is the proper subsection to allege the lack of "state action" which is the core of defendants' claims. I note, however, that there is a lack of agreement among several federal courts as to which is the appropriate subsection to be invoked in such a situation. Meredith v. Allen County War Memorial Hospital Com., 397 F.2d 33, 35 (6th Cir. 1968); Adams v. So. Calif. First Nat'l Bank, 492 F.2d 324, 338 (9th Cir. 1973).

15. 42 U.S.C. § 1983 authorizes a civil action for deprivation of civil rights only when the alleged deprivation is caused by a person *acting under color of state law*:
"Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory*, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." [Emphasis added].
Similarly, plaintiff's claims under the First, Fifth and Eighth Amendments [and possibly the Ninth Amendment as well] having no applicability in and of themselves to actions of the sovereign states, only come into play here by virtue of the Fourteenth Amendment which requires a showing of *state action*:
"*No State* shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall *any State* deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." [Emphasis added].
The "under color of law" requirement of § 1983 has traditionally been treated as the equivalent of the "state action" requirement of the Fourteenth Amendment. Adams v. So. Calif. First Nat'l Bank, 492 F.2d 324, 329 (9th Cir. 1973).

ceptions to this are the claims under 42 U.S.C. § 1985 and § 1986 with which I shall deal later.[16]

Defendants contend that what is involved here is purely private action by a private hospital:

"The United Hospital is a private, self-governing nonprofit organization. It is governed by a Board of Trustees which is composed of various doctors on the staff. . . . Neither the state nor the Federal Government is involved in the governing of the internal affairs of the Hospital or in the decisions relating to appointments to the Medical Staff." [17]

■ Needless to say, the plaintiff disagrees. He asserts several factors which, it is argued, conclusively establishes that the actions of the Hospital and its staff constitute "state action": [18]

1. The Hospital is performing a public function. The State of New York has merely delegated the Hospital to perform its constitutional duty to provide health care services for its citizens.

2. The Hospital has received extensive "Hill-Burton Hospital Construction Program" funds from the federal government.

3. The Hospital has been granted tax exemptions by both the state and federal government.[19]

4. New York has adopted a pervasive scheme of statutes and codes which regulate almost every facet of hospital activity.

5. The Hospital is the *only* general hospital serving the communities of Port Chester, Mamaroneck and Rye. A new hospital, whether public or private, cannot be built within the area presently served by United without the prior approval of the Commissioner of Health of the State of New York.[20]

Plaintiff's arguments are well researched and extremely well presented. Had the matter arisen in any of several other circuits across the country they might very well have proved dispositive of the issue and mandated a resolution in plaintiff's favor.[21] This case, however, arises in the Second Circuit and an examination of the prevailing view of "state action" held by our Court of Appeals leads me to the conclusion that plaintiff has not made a sufficient showing of state involvement. Quite aside from the constraints of *stare decisis* that require me to follow the Second Circuit, it is my belief that its decisions more nearly accord with the Supreme Court's opinion in Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), than those of the circuits which arrive at contrary conclusions.

## IV.

There is little question here that United Hospital is formally a "private" institution. Although established by permission of the legislature, it was organized by private individuals and incorporated as a non-profit organization. The indi-

16. Neither § 1985 nor § 1986 explicitly requires a showing of state involvement and the recent Supreme Court opinion in Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), holds that, in some situations, no such showing need be made.

17. Page 6 of the brief submitted by Clark, Gagliardi & Miller.

18. It is difficult to ascertain from plaintiff's complaint whether he is merely challenging the actions of New York State or whether he asserts the involvement of the federal government as well. Although it might therefore be more accurate to refer to the challenged activity as "governmental action,"

the courts have traditionally utilized the term "state action" to encompass both federal and state involvement and there is no pressing reason to depart from this practice. Jackson v. The Statler Foundation, 496 F.2d 623, 627 (2d Cir. 1974).

19. Although this factor is not explicitly argued in plaintiff's brief, many of the cases cited therein based their findings of state action on such exemptions.

20. New York Public Health Law § 2802, McKinney's Consol.Laws, c. 45.

21. The decisions of these circuits are dealt with in some depth later in the opinion.

viduals who operate the Hospital and are responsible for its management are neither government officials nor government appointees. Instead, the corporate affairs and funds of the Hospital are controlled and administered by a Board of Trustees composed of staff doctors and prominent members of the local community.[22]

 Neither § 1983 nor the Fourteenth Amendment erect a shield against merely private conduct, however discriminatory or wrongful. Shelley v. Kraemer, 334 U.S. 1, 13, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). Conduct that is formally private may, however, "become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the . . . limitations placed upon state action." Evans v. Newton, 382 U.S. 296, 299, 86 S.Ct. 486, 488, 15 L.Ed.2d 373 (1966). "While the principle is easily stated, the question of whether particular discriminatory conduct is private, on the one hand, or amounts to 'state action,' on the other hand, frequently admits of no easy answer." Moose Lodge No. 107 v. Irvis, supra at 172. It is "only by sifting facts and weighing circumstances [that] the nonobvious involvement of the State in private conduct can be attributed its true significance." Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961).

 An examination of the cases decided by our Court of Appeals reveals what appears to me to be a three pronged test for determining the existence of "state action". Thus, in order to subject 'private' institutions to the limitations of § 1983 and the constitutional amendments it must be shown (1) that the state's involvement with the private institution is "significant," [23] (2) "that the state must be involved not simply with *some* activity of the institution . . . but with the activity that caused the injury" [24] (hereinafter referred to as the "nexus" requirement) and (3) that the state's involvement must aid, encourage or connote approval of the complained of activity.[25]

 Before expounding upon the application of the formula to the instant case, it is vital to point out the two situations which represent significant departures from this standard.

The first of these occurs in the area of racial discrimination.[26] Our circuit has long recognized a double "state action" standard: "a less onerous test for cases involving racial discrimination, and a more rigorous standard for other claims". Jackson v. The Statler Foundation, 496 F.2d 623 (2d Cir. 1974); Lefcourt v. Legal Aid Society, 445 F.2d 1150 (2d Cir. 1971; Wolin v. Port Authority, 392 F.2d 83 (2d Cir. 1968), cert denied, 393 U.S. 940, 89 S.Ct. 290, 21 L.Ed.2d 275 (1969). As the court stated in *Jackson*, supra, "conduct which is admittedly part private and part governmental must be more strictly scrutinized when claims of racial discrimination are made." Plaintiff makes no claim of racial discrimination here and therefore does not permit me to abandon the three pronged test in favor of the standard of "strict judicial scrutiny". It is noteworthy that an examination of the cases finding state action in the denial or removal of staff privileges by private hospitals reveals that a large number of them concerned claims of racial discrim-

---

22. Affidavit of Charles J. Alexander, M. D.

23. Reitman v. Mulkey, 387 U.S. 369, 380, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); Powe v. Miles, 407 F.2d 73 (2d Cir. 1968).

24. Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Powe v. Miles, 407 F.2d 73 (2d Cir. 1968).

25. Moose Lodge No. 107 v. Irvis, supra; Bond v. Dentzer, 494 F.2d 302 (2d Cir.

1974); Shirley v. State National Bank of Conn., 493 F.2d 739 (2d Cir. 1974).

26. The rationale behind this exception may make it equally applicable to cases involving sex or age discrimination. That being no part of the claim before me however, there is no need to address this question here.

ination. See Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1963), cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964); Eaton v. Grubbs, 329 F.2d 710 (4th Cir. 1964); Smith v. Hampton Training School, 360 F.2d 577 (4th Cir. 1966).

The second departure from a strict adherence to the three pronged test would appear to exist in the "public function" cases. These involve activities which have long been the exclusive province of state or municipal government. "When a private person is performing, pursuant to a right accorded by statute, a function traditionally performed by the State, the acts of the individual [or institution] may be described as state action." Bond v. Dentzer, 494 F.2d 302, at 311 (2d Cir. 1974); Simkins v. Moses H. Cone Memorial Hospital, supra.

Plaintiff contends that such a "public function" is present here. The New York State Constitution, he asserts, places responsibility for public health squarely in the hands of the state.[27] Proceeding from this foundation the argument is then made that "New York has elected to effect this policy by means of a coordinated plan of building and maintaining public hospitals for certain functions and areas, and by certifying and regulating private hospitals as part of the carrying out of this policy."[28]

The "public function" approach has met with some success in the Supreme Court. See Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) [the company town]; Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) [party primaries]; Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966) [public parks]; and Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc., 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968) [public walkways and parking areas of a privately owned shopping center]. I do not find the reasoning of these cases to be applicable to the private hospital.

Initially, it appears to me that the decisions of our Court of Appeals in Powe v. Miles, 407 F.2d 73 (2d Cir. 1968) and Grafton v. Brooklyn Law School, 478 F.2d 1137 (2d Cir. 1974), are closely analogous to the case at bar.[29]

In Powe v. Miles, supra, the appellants sought to apply the "public function" argument to a private university. Judge Friendly, writing for the court, rejected this contention. "Education," he said, "has never been a state monopoly in this country, even at the primary or secondary levels . . ."[30] The Supreme Court "public function" cases concerning "activities or facilities so clearly governmental in nature" were therefore found not applicable to the university.

In Grafton v. Brooklyn Law School, supra, Judge Friendly extended his conclusion in Powe to private law schools:

"We there [in Powe] rejected the claim that the furnishing of higher

27. Article 17 § 3.

28. Page 5 of plaintiff's brief. This argument has been adopted by the Fourth Circuit in Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1963), cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964), and, by the Sixth Circuit in Meredith v. Allen County War Memorial Hospital Commission, 397 F.2d 33 (6th Cir. 1968). Both of these cases, however, involved a Board of Trustees consisting of a substantial number of members appointed by state agencies. Furthermore the continued vitality of the Meredith case is placed very much in doubt by the recent decision of Jackson v. Norton-Children's Hospital, 487 F.2d 502 (6th Cir. 1973), cert. denied, —— U.S. ——, 94 S.Ct. 2413, 40 L.Ed.2d 776 (1974).

29. No Second Circuit case has come to my attention dealing with applicability of the "public function" argument to *private* hospitals. For this reason I have resorted to analogy. Although McCabe v. Nassau County Medical Center, 453 F.2d 698 (2d Cir. 1971), indicates at 703, fn 11, that the plaintiff there sought to apply the "public function" theory to hospitals, the court did not feel the need to address itself to the question since the case at bar involved a *public* hospital.

30. 407 F.2d at 80.

education necessarily constitutes state action because it is a 'public function' . . . . We see nothing . . . here to call for a different result . . . . The circumstance that we are here dealing with a law school rather than a liberal arts college does not make law teaching 'governmental in nature.' "[31]

It is my conclusion that private hospitals are likewise not "governmental in nature". Unlike fire departments and police departments mentioned by Justice Douglas in Evans v. Newton, supra at 302, hospitals are not traditionally governmental. Private hospitals are the rule rather than the exception. It is only relatively recently that federal, state and local governments have recognized the need for widespread public health care. Traditionally, however, the provision of medical services has been a matter largely in the private domain. Unlike the holding of elections in *Terry* the private hospital does not carry on a "traditionally" governmental function. Unlike the municipal park in *Evans*, the private hospital does not purport to serve the community *as a whole*. Finally, unlike the sidewalks in *Marsh*, and *Logan Valley*, the private hospital does not hold itself out as a public area "open to all comers".[32]

■ Plaintiff counters this by stressing that United Hospital is the *only* general hospital serving the area. As such, he argues, it operates in a quasi-public capacity, being required to provide emergency care for unidentified persons

brought to it,[33] and to accept for treatment all individuals who require immediate hospitalization without regard to ability to pay.[34] Even assuming this to be so, I cannot conclude that it makes the "public function" theory applicable to the case at bar. That doctrine has heretofore been limited in its application to situations where the constitutional violation alleged occurred *in the very activity in which the private institution performed its "traditionally governmental function"*.[35]

This is not the case here. Even if it may be successfully argued that a private hospital is performing a public function it is clear that the function involved is the admission and treatment of patients, not the hiring and firing of doctors, nurses and other staff personnel.[36] I find no compelling authority for extending the "public function" argument to a private hospital in the absence of a nexus between the governmental function performed and the violative activity alleged.[37]

In summary, I have concluded that the two major areas in which the three pronged test has not been utilized by our circuit are racial discrimination and traditionally governmental activities. Neither is present in the case before me. The notion that the "state action" cases will be given diverse treatment depending on the nature of the activity involved and the constitutional infirmity alleged is not a new one. It was Judge Friendly who first utilized the example of a private hospital to illustrate the

31. 478 F.2d at 1140.

32. Powe v. Miles, 407 F.2d at 80.

33. Public Health Law § 2806.

34. Public Health Law – 2805–a.

35. *Evans* dealt with the "use" of a municipal park, *Marsh* and *Logan Valley* with the "use" of sidewalks and *Terry* with the exercise of the right to vote. In all four the activity in which the complained of conduct took place was the very one which had been judicially determined as being "governmental in nature."

36. This, perhaps, would not be so where the hiring and firing of staff members is done by a commission, the members of which hold office as a result of governmental appointments. See Meredith v. Allen County War Memorial Hospital Com'n, 397 F.2d 33, 35 (6th Cir. 1968). No such situation exists in the instant case and it is therefore unnecessary to reach this issue.

37. It is doubtful that the Supreme Court would have applied the "public function" theory to the park in *Evans* had the complaint concerned the discharge of groundskeepers without a full hearing complete with all the protections of due process.

need for a flexible standard in testing for state action:

"The strongest case for outlawing discrimination in admissions is the hospital. Because of the importance of the geographical factor and the literally vital interests often at stake, it may well be held that for the state to allow one Negro to die because a 'private' hospital will not admit him is to allow one more than the Fourteenth Amendment permits. . . . To hold that a state cannot constitutionally allow any hospital to refuse to admit a Negro patient does not compel a similar universal as to fair policies for recruiting staff and other employees, and still less as to procedural due process for their dismissal." [38]

### V.

Having determined the applicability of the three pronged test it remains to examine whether plaintiff's complaint has satisfied its requirements.

▮ The two major factors relied on to endow the actions of United Hospital with the requisite "state action" are: (1) governmental financial aid, and (2) a "pervasive" scheme of laws and regulations governing the activities of all hospitals in the state. I deal with these seriatim keeping in mind, nevertheless, that it is the "totality of the circumstances" which must be considered in testing for the presence of "state action". Burton v. Wilmington Parking Authority, supra.

United Hospital is alleged by plaintiff to be the recipient of "substantial" federal aid in the form of Hill-Burton Hospital Construction Program funds.[39] Additionally, the Hospital is the beneficiary of a host of tax exemptions and participates in Medicare and Medicaid programs. Plaintiff contends that "state action" is therefore present here. Numerous cases are cited by him in support of this proposition. None however were decided in this circuit.

The issue of whether federal funding of private hospitals, primarily via the Hill-Burton Act, is sufficient to bring an otherwise private hospital within the scope of § 1983 and the Fourteenth Amendment is one that has split the circuits. The Fourth,[40] and arguably the First[41] and Third[42] Circuits as well, would find "state action" in the instant

38. Friendly, The Dartmouth College Case and the Public-Private Penumbra, 12 Texas L.Q. (2d Supp.) 141. Judge Friendly recently reiterated this view in Wahba v. New York University, 492 F.2d 96, 100 (2d Cir. 1974), concluding that "decisions dealing with one form of state involvement and a particular provision of the Bill of Rights [are not] at all determinative in passing upon claims concerning different forms of government involvement and other constitutional guarantees . . . .."

39. The Hill-Burton Act, 42 U.S.C. § 291 et seq. provides federal grants to assist in the maintenance and construction of hospitals. "The money is funneled *through* . . . *state agencies* to individual hospitals which are engaged in building projects." Mulvihill v. Julia L. Butterfield Memorial Hospital, 329 F.Supp. 1020, 1023 (S.D.N.Y.1971). [Emphasis added].

40. See Sams v. Ohio Valley General Hospital, 413 F.2d 826 (4th Cir. 1969); Smith v. Hampton Training School for Nurses, 360 F.2d 577 (4th Cir. 1966); Eaton v. Grubbs, 329 F.2d 710 (4th Cir. 1964); Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d

959 (4th Cir. 1963), cert. denied, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964). All of these cases, with the exception of Sams, involved racial discrimination however. Sams concerned denial of equal protection to non-residents seeking staff privileges. Although all of the four cases are easily distinguishable on their facts it is fairly obvious that the Fourth Circuit would rule no differently faced with the facts of the instant case.

41. See Bricker v. Sceva Speare Memorial Hospital, 339 F.Supp. 234, 237 (D.N.H. 1972), where the court said: "I recognize that the weight of authority holds that the acceptance of Hill-Burton funds is sufficient to cloak a private hospital and its medical staff with a mantle of state law." *Bricker* was affirmed by the Court of Appeals for the First Circuit, 468 F.2d 1228 (1st Cir. 1972). The court there did not, however, review the "state action" determination of the trial judge.

42. See Citta v. Delaware Valley Hospital, 313 F.Supp. 301 (E.D.Pa.1970). Cf. Ozlu v. Lock Haven Hospital, 369 F.Supp. 285 (N. D.Pa.1974).

case. The Sixth,[43] Seventh,[44] Eighth [45] and Tenth [46] Circuits most likely would not.

█ Although our Court of Appeals has never considered the effect of Hill-Burton funding on the actions of an otherwise private institution it has considered the effect of other governmental funding. These decisions clearly indicate what I have defined as a three pronged test. Thus the funding (1) must be significant; (2) must have a nexus with the complained of conduct; and, (3) must further the unconstitutional activity.

There is no contention by defendant here that the Hill-Burton funding of United Hospital is insignificant. The primary pitfall for plaintiff comes, however, in meeting requirement two, the "nexus" requirement.

█ Powe v. Miles, supra, made clear "that the state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the [very] activity that caused the injury " [47] In the case at bar the financial aid is directed toward promoting construction of new hospital wings and has no nexus with the employment and termination policies applied with regard to staff. As such, I conclude that there is no "state action" by the mere receipt of Hill-Burton funds. There exist four decisions in this circuit which convince me of the correctness of this decision.

In Grafton v. Brooklyn Law School, supra, our Court of Appeals rejected the plaintiff's contention, that the conduct of the law school officials constituted state action because of a combination of the school's tax exemption, the sale of a site by New York City at a price so low that the school ultimately paid nothing for the land on which it was built, and a $400 payment by the state for each degree awarded. The implication is clear; the financial aid had no relation to plaintiffs' complaints regarding their dismissals from Brooklyn Law School.[48]

In Grossner v. Trustees of Columbia University, 287 F.Supp. 535 (S.D.N.Y. 1968), Judge Frankel refused to find state action, in the context of student discipline despite Columbia's receipt of substantial federal government funding combined with federal, state and local tax exemptions. "Receipt of money from the State", said Judge Frankel, "is not without a good deal more, enough to make the recipient an agency or instrumentality of the Government." [49] He then pointed out the absence of any allegation by plaintiff that the government was involved as a participant in the University disciplinary proceeding complained of. We thus arrive again at the same conclusion; the critical involvement was not in the particular discriminatory action under constitutional attack.

The third significant opinion in my analysis is that of Judge Friendly in

---

43. The recent case of Jackson v. Norton-Childrens Hospital, 487 F.2d 502 (6th Cir. 1973), cert. denied, —— U.S. ——, 94 S.Ct. 2413, 40 L.Ed.2d 776 (1974), would appear to overrule O'Neill v. Grayson County War Memorial Hospital, 472 F.2d 1140 (6th Cir. 1973). See also Place v. Shepherd, 446 F.2d 1239 (6th Cir. 1971) and Meredith v. Allen County War Memorial Hospital, 397 F.2d 33 (6th Cir. 1968).

44. See Doe v. Bellin Memorial Hospital, 479 F.2d 756 (7th Cir. 1973), apparently overruling Holmes v. Silver Cross Hospital, 340 F.Supp. 125 (N.D.Ill.1972).

45. See Stanturf v. Sipes, 335 F.2d 224 (8th Cir. 1964).

46. See Ward v. St. Anthony Hospital, 476 F.2d 671 (10th Cir. 1973). Cf. Don v. Okmulgee Memorial Hospital, 443 F.2d 234 (10th Cir. 1971).

47. 407 F.2d at 81.

48. *Grafton* involved no racial discrimination. It can, therefore, be squared with the decisions in Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) and Jackson v. Statler, 496 F.2d 623 (2d Cir. 1974), both finding public financial assistance to comprise "state action". Both, however, involved racial discrimination and consequently applied a less rigid standard.

49. 287 F.Supp. at 547–548.

Wahba v. New York University, 492 F. 2d 96 (2d Cir. 1974). What is of interest here is not so much the holding of the court but rather its consideration of Simkins v. Moses H. Cone Memorial Hospital, supra. *Simkins*, it will be recalled, is the landmark case in finding "state action" by virtue of the receipt of Hill-Burton funds.[50] The court in *Simkins* had before it a statute permitting the construction of "separate but equal" facilities with Hill-Burton funds. Pursuant to this statutory authority the State of North Carolina distributed these funds to a private, racially segregated hospital. An action was subsequently commenced by several black physicians and patients who charged that the defendant hospital had engaged in discriminatory conduct in violation of the Fourth Amendment. The Fourth Circuit concluded that the state's promotion of the hospital's segregationist policy amounted to "state action". Here there was obviously a nexus between the questioned activity and the governmental funding. Judge Friendly in *Wahba* apparently finds this factor to be a requisite for invoking the *Simkins* holding.[51]

The last of the four decisions, Mulvihill v. Julia L. Butterfield Memorial Hospital, 329 F.Supp. 1020 (S.D.N.Y.1971), is almost identical factually to the matter before me. It involved an action by two physicians against a private hospital alleging lack of due process and equal protection in the hospital's decision not to reappoint the plaintiffs to its staff. Plaintiffs in asserting the requisite state involvement relied heavily on the receipt by defendant of Hill-Burton construction funds. Citing Powe v. Miles, supra, for the proposition that "the

state action, not the private action, must be the subject of the complaint", Judge Metzner concluded in language equally applicable to the case at bar:

"The plaintiffs in the present case fail to grasp this crucial distinction. In the cases they cite, the critical state involvement was in the very prohibited action under constitutional attack. . . . [T]here is nothing in the language or logic of these cases to support the proposition that state action would have been present had the private hospitals in question discharged an employee without notice or a hearing. This is the conduct which is challenged in the present case, *and the state is in no way involved in it.*"[52]

Having concluded that the governmental funding received by United Hospital fails to satisfy the "nexus" requirement of the three pronged "state action" test, I proceed to plaintiff's second major contention, namely, that the extent and intrusiveness of the governmental regulatory scheme governing hospitals sufficiently implicates the state in any activities carried on by such institutions. A number of courts have accepted this principle, most notably those of the Fourth Circuit. Eaton v. Grubbs, 329 F.2d 710 (4th Cir. 1964).[53]

Although I am perfectly willing to concede that the pervasive regulatory scheme here is a "significant" state involvement, fulfilling the first requirement of the three pronged test, it is questionable whether it satisfies the "nexus" requirement, and it clearly fails to "aid, encourage or connote approval of the complained of activity," as required by the third prong.

---

50. *Simkins*, as has been previously stated, involved racial discrimination.

51. 492 F.2d at 101.

52. 329 F.Supp. at 1024 [Emphasis added]. Although the *Mulvihill* opinion has been undermined somewhat by the passage of Public Health Law § 2801–b, discussed later in the opinion, its conclusions regarding the effect

of Hill-Burton funding on the "state action" question remains just as well reasoned and convincing as it was in 1971.

53. See also Meredith v. Allen County War Memorial Hospital, 397 F.2d 33 (6th Cir. 1968) ; Holmes v. Silver Cross Hospital, 340 F.Supp. 125 (N.D.Ill.1972) [7th Circuit] ; Taylor v. St. Vincent's Hospital, 369 F.Supp. 948 (D.Mont.1972) [9th Circuit].

Judge Metzner, in *Mulvihill*, in addition to dealing with the Hill-Burton issue, also was confronted with the contention that the subjecting of private hospitals to detailed regulation by the State of New York amounted to "state action". Judge Metzner rejected this argument noting that, although New York plays a substantial role in supervising the operation of private hospitals within its borders,[54] "the State, as part of its general regulatory scheme, does not in any way associate itself with or influence the internal decisions of a hospital's board of trustees to hire or fire staff members."[55] The mere fact that New York regulates the facilities and standards of care of private hospitals does not *per se* make the acts of the hospital in discharging physicians the acts of the state. "Such a blanket rule," said *Mulvihill*, "would overlook 'the essential point—that . . . . the state action, not the private action, must be the subject of complaint.' "[56]

*Mulvihill* thus concluded that the "nexus" requirement had not been satisfied.[57] It was not contended there that the state in any way associated itself with the hospital's methods of hiring and firing physicians. No governmental approval of the hospital's internal by-laws was required and no state nominees sat on its board of trustees. From this, Judge Metzner found that "the state has never shown an interest in supervising or influencing the purely internal affairs of these hospitals."[58]

Plaintiff in the case at bar contends that post-*Mulvihill* statutory additions to the Public Health Law which seek to prohibit improper practices in hospital staff appointments provide the requisite "nexus" with the challenged activity and therefore deprive that decision of its vitality. There is a great deal of merit to this assertion.

The procedures presently in effect in many hospitals governing staff privileges are capricious and arbitrary. There are certain medical specialities in which it is extremely difficult to obtain staff privileges. In New York City it is estimated that thirty percent of all physicians are without privileges in any hospital. The decisions denying staff privileges in many instances do not disclose the reasons for the denial and are often arrived at because of a purely local situation and without regard to the physician's professional competence.[59]

In order to alleviate this condition the State Legislature, on May 15, 1972 enacted Section 2801–b of the Public Health Law.[60]

54. "State approval is required for incorporation or construction of a hospital. There are limitations on ownership and on solicitation of funds for hospitals. A hospital is required to admit all patients needing immediate care regardless of ability to pay. The state has the right to inspect hospitals, to establish rate schedules and operating standards, and dictate accounting systems. A hospital may operate only after it has been certified by the state and is required to submit periodic reports to state officials." Mulvihill v. Julia L. Butterfield Memorial Hospital, 329 F.Supp. 1020, 1023 (S.D.N.Y. 1971).

55. *Id.* at 1023.

56. *Id.* at 1023.

57. Although our circuit held in McCabe v. Nassau County, 453 F.2d 698, 703 (2d Cir. 1971), that no such nexus need be shown when dealing with hospitals, it explicitly limited its holding to *public* hospitals and expressed no opinion as to what it might hold with respect to *private* hospitals. Judge Moore, dissenting, felt that the Powe v. Miles "nexus" requirement applied as well to Nassau County Medical Center. "The mere fact," he said, "that the hospital is available to members of the public is not determinative or even relevant to the issue here." 453 F.2d at 707.

58. 329 F.Supp. at 1024.

59. The information contained in this paragraph is derived from the public hearings before the State Senate Health Committee on S.8092–A. These hearings are summarized in the memoranda of Senator Lombardi, Chairman of that Committee, contained in the New York State Legislative Annual 1972, pp. 195–6.

60. See Chapter 284 of the Laws of New York 1972 entitled "An Act to amend the public health law, in relation to improper practices in hospital staff appointments and privileges."

Subsection (1) of this statute provides that it shall be an improper practice to deny staff privileges to a physician (a) without stating the reasons therefor or (b) for reasons unrelated to standards of patient care, the objectives of the institution or the character or competency of the applicant.

Subsection (2) provides that any person claiming to be aggrieved by an improper practice defined in Subsection (1) may file a verified complaint with the public health council.

Subsection (3) provides that upon receipt of such a complaint the council shall make a prompt investigation. If the council determines after such an investigation that cause exists for crediting the allegations of the complaint, it shall direct the governing board of the hospital to review its actions.

By enacting this provision, plaintiff asserts, New York has expressed its public policy that staff appointments are matters of concern to the State. Thus, he contends, it has involved itself directly in the very activity out of which the challenge in the complaint arises.[61]

It is clear that the procedures outlined in § 2801–b are not applicable to plaintiff's case. Indeed, when his complaint was referred to the New York State Department of Health for official review, the Public Health Council declined to consider the matter on the ground that the action of the Hospital occurred prior to the effective date of the law.[62] There

would seem, therefore, to be some question as to the appropriateness of considering the effect of a statute on the existence of "state involvement" when the activity complained of preceded its enactment. In any case I find no compelling reason to confront this issue in view of my conclusion that, even when considered, these legislative enactments do not satisfy the third requirement of the Second Circuit "state action" cases.

The Second Circuit has recently stressed the "essential distinction between a regulatory scheme in which a private institution plays a part in an offensive government policy and one which is designed to prevent the institution's acting in an abusive way."[63] In Shirley v. State National Bank of Connecticut, 493 F.2d 739 (2d Cir. 1974), plaintiff contended that a Connecticut statute providing for the necessity of legal process in repossessions sufficiently implicated the state in the seizure of an automobile by defendant bank to constitute "state action". Judge Mulligan, writing for the court disagreed, pointing out that the statute, rather than authorizing the seizure, had actually made it more difficult. "Thus," he concluded, "the State does not *encourage* seizure, nor does it in any way *aid* or *abet* the seller . . . the state enactment was amelioratory not regressive; it did not 'move in' on the plaintiff or other buyers, but rather on the instalment sellers."[64] *Shirley*, then, clearly stands for the

---

61. There exist, in addition to § 2801–b, several other statutes and regulations which govern the appointment and dismissal of staff by hospitals. Public Health Law § 206–a prohibits discrimination in hospital staff privileges because of a physician's participation in any medical group practice or non-profit health insurance plan. Public Health Law § 2803 gives the Commissioner the power to inquire into the adequacy of personnel employed at any hospital. See also Part 720 and 721 of the State Hospital Code established pursuant to the authority of § 2803.

62. This was conveyed to plaintiff's attorney in a letter from Donald MacHarg, Counsel for the Department of Health, which reads in pertinent part:

"... the date of the hospital's . . . denial of his application for privileges was May 3, 1972. Public Health Law § 2801–b . . . became effective May 15, 1972. . . .
"Since the action of the hospital complained of occurred prior to the effective date of the law defining a prohibited practice, we regret to advise you that the Public Health Counsel lacks authority to make the investigation requested. . . ."

63. Judge Friendly dissenting in Jackson v. The Statler Foundation, 496 F.2d 623, at 639 (1974).

64. 493 F.2d at 742 [Emphasis added].

proposition that the mere fact that the state has legislated in the area of the conduct complained of does not in and of itself constitute sufficient participation to be appropriately denominated "state action".

In Bond v. Dentzer, 494 F.2d 302 (2d Cir. 1974), the court reaffirmed its holding in *Shirley*. That case involved a wage assignment invoked by defendants, finance and loan companies, as a result of plaintiffs' alleged default on a loan. Plaintiffs argued that state statutes providing for execution against wages by service of a wage assignment upon an employer was sufficient to constitute state involvement. Judge Mulligan rejected this contention, concluding that the statutes were conspicuously and designedly for the benefit of the borrower and not the lender:

> "The State in this case has not deprived the plaintiffs of anything.
>
> . . .
>
> "It is abundantly clear that . . . [the statute's] provisions were designed, not to encourage the assignment of wages, but to discourage the overreaching of the wage earner." [65]

The most recent state action case in this circuit, Jackson v. The Statler Foundation, 496 F.2d 623 (2d Cir. 1974), set out five factors it considered "particularly important to a determination of 'state action'." One of these was whether the governmental regulatory scheme "connotes government approval of the activity." [66] Although the court in *Jackson* indicated that not each and every one of the five factors need be present to permit a finding of "state action", it limited its conclusions to cases involving racial discrimination. As noted before, "racial discrimination is so peculiarly offensive and was so much the prime target of the Fourteenth Amendment that a lesser degree of involvement may constitute 'state action'

with respect to it than would be required in other contexts." Coleman v. Wagner College, 429 F.2d 1120, 1127 (2d Cir. 1970) (concurring opinion of Judge Friendly).

While it may be true, as plaintiff points out, that analyzing state action in this fragmented manner differs from the majority of holdings in other circuits, it appears to me to be completely in accord with the Supreme Court opinion in Moose Lodge No. 107 v. Irvis, supra. That already widely cited case involved a guest of a member of a private club who was refused service because of his race. He sued, contending that the grant of a liquor license to the lodge by the Pennsylvania Liquor Authority subjected it to a pervasive regulatory scheme which implicated the state in the actions of the lodge. The Court held this insufficient to constitute "state action", concluding that however detailed the regulatory scheme, it cannot be said in any way to foster, approve or encourage the lodge's racially discriminatory practices. [67]

The cases discussed above mandate a conclusion that the regulatory scheme here does not constitute state action even when considered in conjunction with the governmental funding. The decision to deny plaintiff staff privileges was entirely that of the hospital; it was authorized by the hospital's by-laws, and the state in no way fostered, approved or encouraged defendants' conduct. The effect of § 2801–b, if any, [68] is merely ameliatory. "Private action does not become state action simply because government regulation has not gone so far as a plaintiff would like" Jackson v. The Statler Foundation, supra, at 639 (dissenting opinion of Judge Friendly).

## VI.

One question remains to be resolved. Plaintiff's complaint alleges violations

---

65. 494 F.2d at 307.

66. 496 F.2d at 629.

67. 407 U.S. at 176.

68. I, of course, make no decision as to the force of a statute, for purposes of determining "state action", that was enacted after the complained of activity had already occurred.

of 42 U.S.C. § 1985 [69] and § 1986.[70] Neither of these sections mentions that the violative conduct must be taken "under color of state law." Nevertheless, in Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951), the Supreme Court held that state action was indeed a necessary ingredient to a cause of action under these statutes. Twenty years later in Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Court reconsidered the question and arrived at the opposite conclusion. Section 1985(3), concluded Justice Stewart, was clearly intended to cover private conspiracies. A limitation was placed on this holding however, which is crucial to the case at bar:

> "That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others. . . . The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of *invidiously discriminatory motivation* stressed by the sponsors. . . ." [71]

Thus before a cause of action exists under 1985 or 1986 there must be some "racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirator's action." [72] Plaintiff has made no such allegation of class-based discrimination. He has, therefore failed to satisfy the requirements of the statutes. Jackson v. Norton-Children's Hospital, 487 F.2d 502, 503 (6th Cir. 1963), cert. denied, —— U.S. ——, 94 S.Ct. 2413, 40 L.Ed.2d 776 (1974).

*Conclusion*

For all of the preceding reasons the defendants' motion for summary judgment dismissing plaintiff's complaint is granted.

So ordered.

---

69. § 1985 concerns itself with "conspiracy to interfere with civil rights." It is apparent, although not explicitly spelled out in the complaint, that plaintiff is alleging a violation of subsection (3) which deals with conspiracies to deprive persons of "rights or privileges."

70. § 1986 concerns itself with actions for "neglect to prevent" conspiracies mentioned in § 1985. Therefore, if no cause of action is made out under 1985, none exists under 1986 either.

71. 403 U.S. at 102 [Emphasis added].

