Gene A. WARD, M. D., Plaintiff-Appellant,

v.

ST. ANTHONY HOSPITAL et al., Defendants-Appellees.

No. 72–1611.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 12, 1973.

Decided April 4, 1973.

---

Robert Temmer, Denver, Colo. (Charles F. Brega and Samuel J. Smith, Denver, Colo., on the brief), for plaintiff-appellant.

Richard T. Spriggs, Denver, Colo., for defendants-appellees.

Before HILL and HOLLOWAY, Circuit Judges, and TEMPLAR, District Judge.

HILL, Circuit Judge.

This is an appeal by plaintiff-appellant Ward from a decision in the District of Colorado dismissing his action against St. Anthony Hospital, a nonprofit hospital, and others for lack of jurisdiction.

Dr. Ward is a licensed physician who practiced medicine in Wheat Ridge, Colorado, until shortly after the institution of this action. In connection with his Wheat Ridge practice, Dr. Ward was a member of the medical staff of St. Anthony Hospital until May 10, 1971. On that date appellee Hospital, acting by and through its medical executive board and board of trustees, suspended Dr. Ward from its hospital staff.

Dr. Ward avers that his dismissal is unwarranted, arbitrary and in violation of the Hospital's "Constitution, By-Laws, Rules and Regulations." In particular, Dr. Ward declares that the Hospital failed to follow proper administrative procedures before ordering his suspension, in that the Hospital failed to advise him of the proposed suspension of staff privileges; failed to advise him of the reasons for the proposed action; fail-

ed to allow him to appear before either the Credentials or Executive Board; and failed to give him the opportunity to appeal his case to the Board of Trustees prior to suspension. These actions were all in violation of Article II, Section G, paragraph 3 of the Hospital's "Constitution, By-Laws, Rules and Regulations":

> 3. Change of status of a staff member from a classification of greater privilege and responsibility to one of lesser, or vice versa, may be initiated by any service or by the Executive Board itself. In all such cases the member himself shall be informed by the Secretary of the proposed action, and shall be acquainted with the reasons therefor. Each such member shall have ample opportunity to present his views on the proposed Change of Status to the Credentials Committee and/or the Executive Committee. In event of a disagreement between the member and the Executive Board, the member shall have the right to appeal to the Board of Trustees.

Realizing his first obstacle was to surmount the jurisdictional hurdle, Dr. Ward advanced several arguments supporting his right to sue in federal district court. He first asserted that receipt of Hill-Burton, Medicare and Medicaid funds by St. Anthony Hospital constituted sufficient state action to vest the federal district court with jurisdiction under the Civil Rights Act of 1871, 42 U.S.C. § 1983,[1] and 28 U.S.C. § 1343(3).[2] His second major allegation was that a conspiracy had been committed for the purpose of denying Dr. Ward his hospital staff privileges in violation of 42 U.S.C. § 1985 [3] and 28 U.S.C. § 1343(1).[4] The district court rejected these arguments and found that any federal funds given St. Anthony Hospital were insufficient to color the Hospital with state action under the United States Constitution or federal statutes. The lower court further held that § 1985 does not apply since there was no conspiracy to obstruct the due course of justice as prohibited by that section.

[1] As the Supreme Court long ago held, invasion of civil rights by an indi-

---

1. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: . . . (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; . . .

3. Apparently Dr. Ward is relying on § 3 of 42 U.S.C. § 1985, as this section is the only one applicable:

   (3) If two or more persons in any State or Territory conspire or go in disguise on the highways or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

4. The district courts will have original jurisdiction of any civil action authorized by law to be commenced by any person: (1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42.

vidual is not the subject matter of the Fourteenth Amendment. Nor does the Equal Protection Clause prohibit violations of individual rights unless to some significant extent the state is found to have become involved in the violations. The Civil Rights Cases, 109 U.S. 3, 3 S. Ct. 18, 27 L.Ed. 835 (1883). Dr. Ward therefore must show state involvement in the Hospital's suspension of his staff privileges before federal law will apply. To overcome this hurdle, he alleges that federal funds received under Hill-Burton,[5] Medicare, Medicaid, and Colorado-Wyoming Regional Medical programs color the hospital with enough state authority to constitute his dismissal as "state action." It is Dr. Ward's position that all state and federal aid given the Hospital carried with it stringent regulations; that by accepting these governmental funds with the attendant regulations the hospital was transformed into an arm of the state; and that the Hospital members and directors were agents of the state, therefore their dismissal of Dr. Ward was the state's dismissal of him.

Appellant's most persuasive argument is that acceptance of Hill-Burton funds causes the Hospital to act under color of state law. In 1964, the Hospital received two Hill-Burton grants totaling approximately $588,000. Acceptance of the funds, Dr. Ward argues, places the Hospital within the jurisdiction of 42 U.S.C. § 1983. Any other construction would allow states to deprive individuals of their civil rights by funneling funds through private institutions. Holmes v. Silver Cross Hospital, 340 F.Supp. 125 (N.D.Ill.1972). In support of this position, Dr. Ward relies on Simkins v. Moses H. Cone Memorial Hospital, 323 F.2d 959 (4th Cir. 1963), cert. denied, 376 U. S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659 (1964). In that case the court found defendant hospital's participation in the Hill-Burton program sufficient to invoke federal jurisdiction. The court demanded the hospital to end racial discrimination in determining who might use the facilities.

Plaintiff's argument boils down to the fact that states must maintain a fair and just governance of hospitals accepting Hill-Burton funds. Sams v. Ohio Valley General Hospital Ass'n, 413 F.2d 826 (4th Cir. 1969); Citta v. Delaware Valley Hospital, 313 F.Supp. 301 (E.D. Pa.1970). It necessarily follows, appellant argues, that once a private hospital accepts these state funds its representatives are clothed with a mantle of state law. Bricker v. Sceva Speare Memorial Hospital, 339 F.Supp. 234 (D.N.H.1972).

As our court emphasized in Don v. Okmulgee Memorial Hospital, 443 F.2d 234, 235 (10th Cir. 1971), "While receipt of funds under the [Hill-Burton] Act may be significant in determining the existence of state action in acts alleged to have violated a person's constitutional rights, the Act itself creates no personal rights or causes of action as such, nor does it confer jurisdiction on federal courts of controversies involving civil or other personal rights." Stated another way, Dr. Ward cannot obtain jurisdiction merely by invoking the Hill-Burton Act; he must show that funds granted under the Act clothe the Hospital with sufficient state authority to constitute state action. From the cases Dr. Ward cites above, it is clear that determining what is state action is no easy matter. "Only by sifting and weighing circumstances can the non obvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Authori-

---

5. The Hill-Burton Act provides federal funds for governmentally owned and voluntary non-profit hospitals. State agencies inventory existing facilities to de termine hospital construction needs and develop construction priorities under federal standards. These agencies then adopt state-wide plans which are submitted to the Surgeon General of the United States for his approval. Once approved, federal funds are allocated among the states according to a mathematical formula based on population and per capita income (42 U.S.C. § 291)

ty, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961).

Dr. Ward urges us to hold that private institutions receiving state or federal aid are acting under color of state law. Citta v. Delaware Valley Hospital, supra. There may be a point in the amount of governmental aid given private hospitals which renders the acts of its board members the acts of the state. We do not attempt to decide that question here. But in any event, we do not feel in the present case the Hospital has received governmental funding sufficient to invoke § 1983 jurisdiction. The Hospital was given approximately $588,000 in Hill-Burton funds between the years 1958 and 1971. During the same period total construction costs were approximately $11,500,000. The percentage of Hill-Burton funds to total construction cost was approximately five percent. Such a small percentage of the total costs is not sufficient to invoke federal jurisdiction. Otherwise, in our time of increasing federal aid to private institutions and businesses, the private sector would find itself constantly charged with state action in the performance of functions normally considered as private. Grossner v. Trustees of Columbia University, 287 F.Supp. 535 (S.D.N.Y.1968).

There is little doubt that under the Hill-Burton Act and state law, hospitals in Colorado are subject to intricate state regulation. This alone, however, is not sufficient to invoke federal jurisdiction. State action does not arise merely because private hospitals receive governmental aid; more is required than that. Our court previously held that the state must be involved in the activity causing the alleged injury before federal jurisdiction can be invoked. That is, the claimed involvement must be associated with the challenged activity. Browns v. Mitchell, 409 F.2d 593 (10th Cir. 1969). The fact that Colorado regulates "facilities and standards of care of private hospitals or offers them financial support does not make the acts of these hospitals in discharging physicians the acts of the state." Mulvihill v. Julia L. Butterfield Memorial Hospital, 329 F.Supp. 1020, 1023 (S.D.N.Y.1971). Such a rule would overlook the "essential point— that the state must be involved not simply with some activity of the institution alleged to have inflicted injury upon a plaintiff but with the activity that caused the injury. Putting the point another way, the state action, not the private action, must be the subject of complaint." Powe v. Miles, 407 F.2d 73, 81 (2d Cir. 1968).

Dr. Ward has failed to show that Colorado is involved in his dismissal from the St. Anthony Hospital. This crucial point distinguishes many of the cases Dr. Ward relies upon to show state involvement. For example, in Simkins v. Moses H. Cone Memorial Hospital, supra, the state of North Carolina actively engaged in a plan to distribute Hill-Burton funds to a private, racially segregated hospital pursuant to a state policy of racial segregation. The federal court properly exercised jurisdiction because plaintiff was challenging the state's illegal policy of encouraging segregation. No such state involvement has been shown by Dr. Ward in the present case.

State regulation of Colorado hospitals is to assure quality medical service throughout the state. Nowhere has Dr. Ward shown that Colorado has an interest in supervising or influencing the purely internal affairs of private hospitals. Without this proof we do not believe receiving Hill-Burton or state funds is sufficient to invoke federal jurisdiction under § 1983.

Dr. Ward further argues that even if the Hospital's receipt of Hill-Burton funds is not sufficient to invoke federal jurisdiction, the cumulative effect of the Hospital's exemption from state and federal taxes, its receipt of substantial funds from Medicaid and Medicare and its subjection to exhaustive state and federal regulations transforms it into an arm of the state. Our court has expressly held in Browns v. Mitchell, supra, that tax exemptions alone do not vest a private institution

with state authority. Dr. Ward also argues, however, that all the benefits received and regulations imposed on the Hospital by the state distinguish this case from Browns and brings it within the realm of Holmes v. Silver Cross Hospital, supra. In Holmes, the plaintiff-administratrix sued defendant private hospital under 42 U.S.C. § 1983 for giving decedent a blood transfusion after the decedent had advised the doctors of his religious convictions which precluded transfusion. The court allowed jurisdiction because defendant hospital is licensed by the state and is subjected to pervasive regulations concerning its operations. Its actions are state actions for Fourteenth Amendment purposes and under color of state law. We do not find Holmes persuasive authority because our court, as emphasized above, requires the complaining party to show a causal connection between state conduct and plaintiff's injury. As Dr. Ward has not shown this causal connection we are precluded from hearing this case. Browns v. Mitchell, supra.

■■ Dr. Ward's final argument is that staff members, employees and agents of defendant Hospital met at various times and places for the purpose of denying him his staff privileges. This unlawful conspiracy was in violation of 42 U.S.C. § 1985 and 28 U.S.C. § 1343(1). Admittedly private conspiracies as well as those perpetrated by state authorities may be the subject of a suit in certain types of cases. Griffin v. Breckenridge, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). This authority to sue for a private conspiracy, however, has been expressly limited:

> That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others. . . . The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of ac-

tion, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. . . .

> The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.

Griffin v. Breckenridge, at 101–102, 91 S.Ct. at 1798. Nowhere has Dr. Ward alleged that he was a member of any particular class, racial or otherwise. The alleged removal of him from defendant's medical staff has in no way been equated with racial or otherwise class based invidiously discriminatory animus. His failure to show class based discrimination precludes our court from invoking § 1985 jurisdiction.

The court's order denying the filing of a second amended complaint and dismissing this action was entirely proper.

Affirmed.