**PONCA CITY HOSPITAL, INC., Appellant,**

v.

**James W. MURPHREE, M.D., Appellee.**

**No. 48130.**

Supreme Court of Oklahoma.

Jan. 13, 1976.

Rehearing Denied Feb. 17, 1976.

Stephen M. Blaes, Gen. Counsel, Ponca City Hospital, Inc., Wichita, Kan., McAfee Taft, Mark, Bond, Rucks & Woodruff by Joseph G. Rucks and Philip D. Hart, Oklahoma City, for appellant.

Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick by L. E. Stringer and Clyde A. Muchmore, Oklahoma City, for appellee.

DOOLIN, Justice.

This appeal presents the question whether the action of a private hospital in revoking staff privileges of a physician is subject to judicial review. The plaintiff appellee is a physician who has been a member of the radiology staff at the Ponca City Hospital (Hospital) for nearly twenty years. In November of 1974, plaintiff was notified by letter from the chairman of the Board of Trustees of the Hospital Corporation that his medical staff privileges would be revoked except for those patients presently under his active care. This was done following several hearings before the Board and before the Judicial Committee of the Hospital, and was reached by a unanimous vote of the Board. This disciplinary action was taken because of alleged disruptive activities of the plaintiff and the difficulty the radiology personnel had in working with him.

On being notified of the Board's decision, plaintiff filed the instant action in the district court asking for a temporary injunction requiring the Hospital to reinstate him to active staff membership and for the further relief of a permanent injunction to the same effect. A temporary restraining order was issued and the subsequent temporary injunction was granted as prayed for. In a pretrial order the trial court overruled Hospital's demurrer and accepted jurisdiction. On hearing and final disposition the trial court issued the permanent injunction enjoining Hospital from taking or enforcing any action affecting the plaintiff's active staff member-

ship which was based on acts of the plaintiff prior to the time of the contested dismissal. It is from this permanent injunction that the Hospital appeals.

The Hospital itself is an asset of Ponca City Hospital Incorporated, a private not-for-profit corporation existing under the laws of the State of Oklahoma in accordance with 18 O.S.1971 § 851 et seq. In the late 1950's, Hospital found it necessary to expand its facilities. The construction was partially financed by receipt of funds under the Hill-Burton Act of 1965, 42 U.S.C. § 291 et seq. Further construction is under way at the present time financed through the Ponca City Hospital Authority, a trust expressly created to raise money for construction by issuance of tax exempt bonds secured by a first mortgage on the hospital. The trust, which will be dissolved upon retirement of the bonds, names the City of Ponca City as beneficiary. Management and control of the Hospital continues at all times to be vested in the Hospital Corporation.

Plaintiff claims that the receipt of Hill-Burton funds and the use of the trust to finance current construction make any action taken by the Hospital, through the Board, state action as contemplated by the fourteenth amendment to the Constitution of the United States. He alleges that the staff by-laws are a contract between the staff and the hospital and the revocation of his privileges was a breach of said contract. He further claims that he has been deprived of due process by the action of the Board in that his dismissal was unreasonable, arbitrary, capricious and done without sufficient cause.

If, however, as Hospital claims, the mere receipt of funds from governmental or public sources does not change the character of a private hospital into one of a public hospital then the court has no jurisdiction to hear these grievances and the case should have been dismissed.

The trial court, while recognizing the majority of jurisdictions hold there is no judicial review available for a private hospital corporation, found that due to the trust authority and to the fact that there was no other hospital in the community, it did have review authority. It further found the order of dismissal by the Board failed both as to due process under the by-laws and as to lack of substantial evidence presented in the hearing before the Judicial Review Committee. The trial court did not meet the contract issue.

The Hospital submits on appeal that the primary error of the district court was in accepting jurisdiction of a controversy arising from the exercise of discretion and judgment by the Hospital's governing body. It claims that the management of the internal affairs of a private hospital is not subject to judicial review and the court is without authority to substitute its judgment for the hospital's. *Edson v. Griffin Hospital,* 21 Conn.Sup. 55, 144 A.2d 341 (1958), *Shulman v. Washington Hospital Center,* 222 F.Supp. 59 (D.D.C.1963), *Natale v. Sisters of Mercy of Council Bluff,* 243 Iowa 582, 52 N.W.2d 701 (1952).

There is not much question the Ponca City Hospital was established and incorporate by a private organization within the criteria set down by *Shulman v. Washington Hospital Center, supra,* p. 61. That Court defined a public hospital as ". . . one owned, maintained and operated by a governmental unit, such as a municipality, or county, and supported by governmental funds." A private hospital was defined as ". . . one that is owned, maintained and operated by a corporation or an individual without any participation on the part of any governmental agency in its control."

Management of the Hospital in this case is not in the hands of government officials, nor is it owned by State. What the amount of governmental involvement must be before a hospital may be classified as public or quasi-public has been the subject of much controversy in other jurisdictions, but the question has never been reached by this Court.

One of the first cases to face this distinction was *Levin v. Sinai Hospital of Baltimore City, Inc.*, 186 Md. 174, 46 A.2d 298 (1946), which held that a hospital, although operated solely for the public, tax exempt, not for profit but in receipt of appropriations from the City and State, is nevertheless a private institution if founded and maintained by a private corporation with authority to elect its own directors.

*Khoury v. Community Memorial Hospital, Inc.*, 203 Va. 236, 123 S.E.2d 533 (1962), states albeit federal and state funds may have made construction of the hospital possible, it was not owned by the federal or state government and was not an instrumentality of the government even though the service it performed was in the public interest. Under these circumstances, the Court held that the hospital fell squarely within the time honored definition of a private corporation. This Court believed "when the trustees of a private hospital, in their sound discretion, exclude a doctor from the use of the facilities of the hospital, the courts are without authority to nullify that discretion by injunctive process. There are no constitutional or statutory rights (as therein presented) of the doctor, or of his patients who wish to be treated in the hospital by him, which warrant such interference." (Parenthetical phrase supplied). *Khoury* p. 539.

In *Slavcoff v. Harrisburg Polyclinic Hospital*, 375 F.Supp. 999 (M.D.Penn.1974), the hospital had received over three million dollars, 1/3 of the total construction cost, from Hill-Burton funds. The Court nevertheless held that these funds in no way converted the activity of the hospital into governmental activity and dismissed the case for lack of subject matter jurisdiction.

In *Akopiantz v. Board of County Commissioners of Oters County*, 333 P.2d 611 (N.M.1959) the Court held the hospital to be private despite the fact that funds for construction were derived from a county bond issue where the county did not itself manage the hospital. Also see *Dillard v. Rowland*, 520 S.W.2d 81 (Mo.App.1974)

and *Weary v. Baylor University Hospital* 360 S.W.2d 895 (Tex.1962), to the same effect.

In *Barrett v. United Hospital*, 376 F. Supp. 791 (S.D.N.Y.1974), the Court first recognized though the fourteenth amendment does not erect a shield against merely private conduct, however discriminatory or wrongful, conduct may become so entwined with governmental policies as to become subject to the limitations placed upon state action by the United States Constitution.

The New York Court then revealed a three pronged test for determining the existence of "state action." This test provides, in order for a private hospital to be subject to the procedural requirements of the fourteenth as well as the other amendments, it must be shown (1) that the state's involvement with the private institution is significant, (2) that the state must be involved with the activity that caused the injury in other words a "nexus" must exist, and (3) that the state's involvement must aid, encourage or connote approval of the complained of activity.

The primary theme running through this and other recent federal decisions emphasizes requirement number (2) above, that there must be causal connection between the state conduct or involvement and the injury complained of. State action and thus jurisdiction does not arise merely because private hospitals or other institutions receive governmental aid. *Ascherman v. Presbyterian Hospital of Pacific Medical Center, Inc.*, 507 F.2d 1103 (9th Cir. 1974). In *Ward v. St. Anthony Hospital*, 476 F.2d 671 (10th Cir. 1973) a circuit case arising in Colorado, the Hospital had received approximately 5% of its total hospital construction costs from Hill-Burton Funds. Although Colorado hospitals are regulated by statute, these regulations did not extend to such internal affairs as dismissal of the plaintiff from the medical staff. Plaintiff totally failed to show state involvement in the activity questioned, the suspension of his staff privileges by the Hospital, thus he could ordinarily not invoke the protection

of the fourteenth amendment to complain that his dismissal was unwarranted, arbitrary and in violation of the Hospital's rules and regulations. Private action, not state action, was the subject of plaintiff's complaint. Also see *Jackson v. Norton-Children's Hospitals, Inc.,* 487 F.2d 502 (6th Cir. 1973), *Powe v. Miles,* 407 F.2d 73 (2d Cir. 1968).

As was the case in *Ward* and *Barrett,* plaintiff failed to show that the State was involved in his dismissal from the hospital staff.

This situation should not be equated with litigation arising from complaints of racial discrimination. In the cases reviewed by the Court in *Barrett* a "less onerous test" was used to find state action if the litigation involved racial discrimination. This could be applied equally if age or sex discrimination was involved. There is no such claim here.

The trial court was strongly influenced by plaintiff's argument that Hospital is the only hospital serving the area and as such serves a public function thus becoming quasi-public. But "(e)ven if it may be successfully argued that a private hospital is performing a public function it is clear that the function involved is the admission and treatment of patients, not the hiring and firing of doctors, nurses and other staff personnel." *Barrett v. United Hospital, supra,* p. 799. As did the *Barrett* Court, we find no compelling reason for finding state action, in the absence of a nexus between the purported governmental function and the violative activity alleged, merely because of the lack of other available facilities.

Plaintiff contends the question is more complex than categorizing a hospital as private or public. Although agreeing that the majority of decisions follow Hospital's reasoning, plaintiff relies primarily on *Silver v. Castle Memorial Hospital,* 53 Haw. 475, 497 P.2d 564 (1972), which admittedly is contra to the authorities previously cited.

That Court held if there is more than nominal governmental funding then the hospital is "quasi public" and subject to due process requirements and judicial review of its actions. This case is quoted in *Rao v. Auburn General Hospital,* 10 Wash.App. 361, 517 P.2d 240 (1973), also holding that a hospital, quasi-public in nature, is subject to the same responsibilities as a public one. "The 'quasi-public' status is achieved if what would otherwise be a truly private hospital was constructed with public funds, is presently receiving public benefits or has been sufficiently incorporated into a governmental plan for providing hospital facilities to the public." *Silver v. Castle supra* 497 P.2d at p. 569. The Hawaii Court still refused to "characterize appellee as anything other than a private hospital,"[1] but granted judicial review because there was present more than nominal governmental funding. We reject this approach as being totally at odds with the federal decisions previously quoted which require that there must be some governmental right to supervise the internal affairs before the acts of the hospital may be classified as state action.

Other cases cited by plaintiff, although allowing judicial review of actions of a quasi-public hospital, would narrowly limit the scope of review to a consideration of whether exclusion from staff privileges was done in accordance with the rules of the hospital. *Bricker v. Sceva Speare Memorial Hospital,* 111 N.H. 276, 281 A.2d 589 (1971), *Berberian v. Lancaster Osteopathic Hospital Association, Inc.,* 395 Pa. 257, 149 A.2d 456 (1959), *Shulman v. Washington Hospital Center supra.*

The bill of rights and the fourteenth amendment to the Constitution of the United States were created to protect citizens from governmental manipulation of their individual freedoms by the State or government officials. Our judicial system is available to all in order to insure this protection. By no stretch of the imagination

---

1. *Silver,* p. 570.

can we conceive of any manner in which Dr. Murphree has been denied these protected rights merely because the corporate hospital has acquired money from government appropriations and financial investment by the public. We are not unmindful that occasional injustices may remain uncorrected due to such judicial abstention from review of the internal workings of any corporation serving the public or otherwise. But the reasoning of *Barrett* is persuasive and we hereby adopt it in holding there is no judicial review of Hospital's termination of plaintiff's staff privileges, absent either a showing of a causal relationship between the state's activity and the activity causing the injury, or a claim of discrimination because of race, sex or age.

Even if it could be successfully argued that the acceptance of the staff by-laws by the Hospital created a relationship based on contract, plaintiff's suit would then be for breach of contract at law or specific performance, not injunctive relief. The staff by-laws do not purport to be a contract and do not appear to be such on their face. The petition does not sound in contract, although a breach is alleged; plaintiff does not pray for damages or specific performance. The suit was in equity for an injunction and the trial court properly, did not consider the contract issue.

If we were to hold that Hospital's actions were subject to judicial review, then the presence or absence of a contractual relationship might be significant. But having found no justiciable issue in that Hospital's status as a private hospital has not been changed by the receipt of Hill-Burton funds or by the trust created for financial purposes, we do not reach the question of whether Hospital failed to follow the requirements of the staff by-laws and thus was in breach of contract.

In *State ex rel Wolf v. La Crosse Lutheran Hospital Association*, 181 Wis. 33, 193 N.W. 994 (1923) it was held that the duties imposed upon a corporation by the by-laws and not by express law would not be enforced by mandamus. We too will not enforce by injunction, duties derived from the by-laws of a private hospital corporation, absent legal mandates.

Reversed and remanded with instructions to sustain Hospital's demurrer to plaintiff's petition.

WILLIAMS, C. J., and DAVISON, IRWIN, BERRY, LAVENDER and SIMMS, JJ., concur.

BARNES, J., concurs in results.

HODGES, V. C. J., dissenting.