**Robert M. CHOUTEAU,
Plaintiff–Appellant,**

v.

**ENID MEMORIAL HOSPITAL; Henry Harnish, Ralph Coffman, Larry Keeler, and Ray Stowers, Defendants–Appellees.**

No. 92–6085.

United States Court of Appeals,
Tenth Circuit.

May 3, 1993.

Cameron M. Spradling of Suggs, Spradling & Associates, Irving, TX, for plaintiff-appellant.

Glen D. Huff (Darrell W. Downs, with him on the brief) of Foliart, Huff, Ottaway & Caldwell, Oklahoma City, OK, for defendants-appellees.

Before EBEL, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and OWEN, Senior District Judge.*

McWILLIAMS, Senior Circuit Judge.

Dr. Robert M. Chouteau is an osteopath and orthopedic surgeon whose surgical and staff privileges at Enid Memorial Hospital (the Hospital) were terminated on July 22, 1986. In 1988, Dr. Chouteau filed an action in the United States District Court for the Western District of Oklahoma against the Hospital, and various individuals, alleging violations of 42 U.S.C. § 1983 and the Sherman Act, and asserting pendent state claims. After discovery, the defendants in that action moved for summary judgment. Dr. Chouteau then moved to dismiss his action without prejudice. Over defendants' objection, the district court, on January 9, 1990, dismissed Dr. Chouteau's action without prejudice.

On October 11, 1990, Dr. Chouteau filed the present action in the United States District Court for the Western District of Oklahoma, naming as defendants the Hospital and Drs. Harnish, Coffman, Keeler and Stowers, all osteopaths who practiced at the Hospital. Drs. Harnish, Coffman and Stowers were members of the Hospital's board of directors at the time of Dr. Chouteau's termination of privileges. Dr. Keeler was a member of the Hospital's Credentials Committee but resigned when Dr. Chouteau came up for review. This action, like the previous action, arose from the Hospital's termination of Dr. Chouteau's surgical and staff privileges on July 22, 1986.

In his second complaint, Dr. Chouteau asserted two claims for relief, wrongful termination of staff privileges and defamation. Jurisdiction was based on 28 U.S.C. § 1332(a), Dr. Chouteau then being a citizen and resident of Texas and the defendants being citizens and residents of Oklahoma, and the amount in controversy exceeding $50,000.

By answer, the defendants denied liability. After discovery, the defendants moved for summary judgment. The district court granted summary judgment in favor of all defendants and dismissed the action on the merits. Thereafter, the district court denied Dr. Chouteau's motion to reconsider, or, in the alternative, for a new trial. Dr. Chouteau appeals the judgment entered.

On appeal, Dr. Chouteau does not challenge the dismissal of his second claim based on alleged defamation. Accordingly, we need not address that matter.

In his complaint, Dr. Chouteau characterized his first claim for relief as "Wrongful Termination of Staff Privileges." Under that heading, Dr. Chouteau alleged that his "surgical hospital privileges created a relationship between the plaintiff and defendant Hospital that was contractual in nature ..." and that the termination of his privileges by the Hospital was "wrongful and against public policy." The complaint indicates to us that Dr. Chouteau's first claim was in reality a claim for breach of contract asserted against the Hospital.

However, in granting the defendants' motion for summary judgment, the district court treated this particular claim as one sounding in tort for wrongful interference with Dr. Chouteau's "business relationship" with the Hospital. In this regard, a claim for wrongful interference with contract will not lie where the alleged interferer is a party to the contract with which he allegedly interfered. *See* Restatement (Second) of Torts § 766; *Niemeyer v. U.S. Fidelity & Guaranty Co.,* 789 P.2d 1318 (Okla.1990). Accordingly, an action would not lie against the Hospital based on wrongful interference.[1]

---

* The Honorable Richard Owen, Senior District Judge for the Southern District of New York, sitting by designation.

1. In *Ponca City Hospital, Inc. v. Murphree,* 545 P.2d 738 (Okla.1976), a doctor whose staff privileges at a hospital had been terminated brought suit against the hospital seeking immediate reinstatement and a permanent injunction enjoining the hospital from taking any action affecting his staff privileges. The doctor prevailed in the trial court, but, on appeal, the Oklahoma Supreme Court reversed. On appeal, the doctor contended that because the hospital accepted federal Hill–Burton funds, the hospital's actions constituted "state action" as contemplated by the Fourteenth Amendment. The Oklahoma Supreme Court rejected the doctor's argument and held that the hospital was not a "state actor," even though it received federal funds, and that under Oklahoma law a private hospital's decision to terminate staff privileges was not subject to judicial review "absent a showing of a causal relationship between the state's activity and the ac-

As concerns the individual defendants, the district court concluded that, on the record before it, the defendants were justified in their actions leading up to and culminating in the termination of Dr. Chouteau's staff privileges at the Hospital and on this basis granted summary judgment for the defendants on Dr. Chouteau's claim of "Wrongful Termination of Staff Privileges."

On appeal, Dr. Chouteau takes no exception to the district court's characterization of his first claim as being one for wrongful interference by the defendants with his "business relationship" with the Hospital, and in this connection simply argues that, on the record before it, the district court erred in holding that the acts of the defendants leading up to and culminating in the termination of his staff privileges were justified.

■ This being a diversity case, the parties agree that Oklahoma law governs. Further, the parties agree that *Waggoner v. Town & Country Mobile Homes, Inc.*, 808 P.2d 649, 654 (Okla.1990) sets forth the essentials of an action for interference with a business relationship as follows: (1) the plaintiff had a business or contractual right that was interfered with; (2) the interference was malicious and wrongful and neither justified, privileged nor excusable; and (3) damage was proximately sustained as a result of the interference.

The district court accepted the test laid down in *Waggoner*, and, from the record before it, concluded that the actions of the defendants were "justified and reasonable under the circumstances." In thus concluding, the district court spoke as follows:

The Court will not recite every detail leading to the removal of Plaintiff's privileges. Instead, the Court will capsulize the background information as follows: On July 22, 1986, the Enid Memorial Hospital Board of Directors, which includes all the individual defendants, suspended privileges of the Plaintiff Chouteau. Prior to that time evidence indicated that eleven malpractice suits in thirty-two months had been filed

against the Plaintiff Chouteau. The Plaintiff Chouteau had difficulty in obtaining malpractice insurance. The Defendants obtained a review of the Plaintiff's practices from an independent source, the Oklahoma Foundation for Peer Review. On December 4, 1985, the Oklahoma Foundation for Peer Review informed Defendants that Plaintiff's "standard of orthopaedic care is grossly inadequate." On June 3, 1986, the Oklahoma Foundation for Peer Review stated: "To allow him [Plaintiff Chouteau] to continue his practice allows the further maiming of patients . . . ."

In granting summary judgment, the district court relied heavily on *Krebsbach v. Henley*, 725 P.2d 852 (Okla.1986), where the Oklahoma Supreme Court considered the issue of justification for interference with a business relationship in the context of a doctor having his staff privileges terminated by a hospital. In that case, the doctor whose staff privileges had been terminated by the hospital sued other doctors alleging, *inter alia*, that they had interfered with his business relationship with the hospital. The district court in *Krebsbach* granted the defendants' motion for summary judgment.

■ On appeal, the Oklahoma Supreme Court in *Krebsbach* affirmed the district court, and, in so doing, spoke as follows:

In this case all parties testifying by way of depositions agreed that medical ethics justified, and in fact mandated, the refusal of appellees to work with appellant on patients when they did not feel confident of appellant's abilities. The facts presented in this case clearly support a finding that this concern was justified. The facts do not provide any justifiable linkage to appellant's assertion that the action was in retaliation for appellant's anti-abortion activities.

*Id.* at 858.

The underlying facts in *Krebsbach* are similar, though of course not identical, to the facts in the instant case. However, there is one important identity. In *Krebsbach*, the

---

tivity causing the injury, or a claim of discrimination because of race, sex or age." *Id.* at 742. Because Dr. Chouteau made no claim based on the Fourteenth Amendment and did not allege in

his complaint that the Hospital was a state actor, it would appear that the Hospital's decision regarding Dr. Chouteau's termination is not, as such, subject to judicial review.

hospital terminated the doctor's staff privileges only after a "chart review of some twenty patients admitted by appellant conducted by an ad hoc committee of physicians from the Oklahoma State Medical Association." *Id.* at 855. Likewise, in the instant case, Dr. Chouteau's staff privileges were not terminated until after the extremely negative report from the Oklahoma Foundation for Peer Review.

Our study of the record convinces us that the district court, under Oklahoma law, did not err in granting defendants' motion for summary judgment. Before terminating Dr. Chouteau's staff privileges the Hospital conducted its own in-house investigation of the complaints against Dr. Chouteau, had an outside attorney make an independent investigation, and had received two highly critical reports from the Oklahoma Foundation for Peer Review.[2] Under the pronouncement in *Krebsbach*, "[i]t is the function of a summary judgment procedure to eliminate a useless trial where there is no conflicting evidence as to factual issues bearing significantly on the outcome of the case, and under these facts reasonable people could draw only a set of conclusions which would support judgment for one of the parties."[3]

Judgment affirmed.

---

**2.** As an ironic hindsight, we are advised that in 1989 a jury returned a verdict for $740,000 against Dr. Chouteau and the Hospital where the Hospital had been charged with negligence for failing to terminate Dr. Chouteau's staff privileges sooner than it did.

**3.** Much of Dr. Chouteau's brief in this court is devoted to the issue of whether the defendants were so-called "state actors," based on the fact that the Hospital leased the hospital premises from the Enid Memorial Hospital Authority. However, we do not regard the instant case as being one based on civil rights violations. It would appear that in his first action Dr. Chouteau did, *inter alia*, assert a claim based on 42 U.S.C. § 1983. However, that action was dismissed without prejudice at Dr. Chouteau's request. The complaint in the instant case makes no mention of 42 U.S.C. § 1983 and is, to us, simply a diversity case setting forth two claims, one described as wrongful termination of staff privileges, which the district court treated, apparently without objection, as a claim for wrongful interference with Dr. Chouteau's "business relationship" with the Hospital, and a second claim for defamation. It is true that in its order granting summary judgment the district court made passing reference in a footnote to the fact that it rejected any suggestion by Dr. Chouteau that the defendants were "state actors." The record before us is unclear as to what prompted that comment. However, from reading the text of the judge's order granting summary judgment it is quite clear that he felt there were two claims before him, one based on wrongful interference with a business relationship, and a second for defamation. And, in any event, we find no language within the four corners of the complaint which would suggest that Dr. Chouteau was claiming that while acting under the color of state law the defendants violated his Fourteenth Amendment rights.