34 F.3d 1076
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Fred Andrew ANDERSON, III, Plaintiff-Appellant,
v.
HUMANA, INC.; HUMANA OF AURORA, INC.; WESTERN NEUROLOGICAL
GROUP, P.C.; William H. Bentley, M.D.; T. Scott Gilmer,
M.D.; John A. Myers, M.D.; Hannelore Anderson; Kay Starr;
Alison Mulholland; Jack Doucett, M.D.; and Jane Doe and
unknown individuals, Defendants-Appellees.
 Nos. 93-1250, 93-1479.
 United States Court of Appeals, Tenth Circuit.
 Aug. 9, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before LOGAN and BARRETT, Circuit Judges, and RUSSELL,** District Judge.
 
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The cases are therefore ordered submitted without oral argument. Plaintiff's request for oral argument is denied.
 
 
 3
 In No. 93-1250, plaintiff Fred A. Anderson, III appeals the district court's dismissal of his claims against defendants on the merits. In No. 93-1479, he appeals the district court's award of attorney fees and expenses to defendants on the basis that his complaint was frivolous and his litigation practices abusive and deceptive. In both, he appeals the district court's denial of his motion for change of venue or recusal, which he filed after dismissal of his claims on the merits. We have consolidated the appeals and have jurisdiction under 28 U.S.C. 1291. We grant plaintiff's motion to proceed in forma pauperis in No. 93-1250 so we may reach the merits of that appeal. (Plaintiff paid the filing fees for No. 93-1479.)
 
 
 4
 The district court's June 11, 1993 order regarding dispositive motions fully recounts the factual background of the case, and we only briefly summarize that background here. On September 12, 1990, plaintiff's father suffered a severe stroke and was rushed to Humana Hospital in Aurora, Colorado. Plaintiff's father died in the hospital on September 15. The record contains testimony that from the time the father arrived at the hospital until he died, he was in a deep coma such that it was impossible for him to communicate or formulate a cognitive response to any question. Appellees' App., Vol. 2 at 248 (filed in No. 93-1250). Plaintiff, however, claims that his father was able to communicate through volitional body movements. Suspecting that his father's wife, Hannelore Anderson (plaintiff's stepmother), had poisoned his father, plaintiff asked his father whether that had in fact happened, and his father allegedly responded in the affirmative by wiggling his toe. (Plaintiff refers to this toe wiggling as his father's dying declaration.) Plaintiff informed certain of the defendants of the alleged dying declaration and requested that toxicological studies be performed on his father.[2]
 
 
 5
 Plaintiff claims that no toxicological studies and no autopsy were performed. He also claims that the hospital staff allowed him and his siblings much less access to his father in his last hours than it allowed his stepmother and her children. He alleges that this resulted from discrimination because he and his siblings are black and his stepmother and her children are white. In his complaint and subsequent amendments and clarifications, he brought claims for medical malpractice; conspiracy, in violation of 42 U.S.C.1985, to deprive him of his rights under the First, Thirteenth and Fourteenth Amendments and 42 U.S.C.1983 and 1986; fraud; intentional infliction of emotional distress; "stubborn litigiousness for refusing to settle;" claims under "42 U.S.C.1981-83, 1985(3), 1986, and 2000a;" "substantive civil rights violations;" and wrongful death. Defendants are Drs. Bentley, Gilmer, and Myers and their corporation Western Neurological Group, P.C., who treated plaintiff's father in the hospital; nurses Mulholland and Starr, who worked at the hospital; Dr. Doucette, who plaintiff claims falsified his father's autopsy report; and the hospital and its parent corporation.[3]
 
 
 6
 The district court granted Drs. Bentley's, Gilmer's and Myers' and Western Neurological's motion to dismiss and granted the remaining defendants' motions for summary judgment. It also granted defendants' motion to strike Hannelore Anderson as a defendant, whom plaintiff attempted to add near the end of the discovery deadline. Following these orders on the merits, plaintiff moved for recusal of the district court and magistrate judges and for transfer of the case to the District of Georgia. This motion and subsequent motions for reconsideration were denied. Finally, the district court awarded attorney fees and expenses to defendants totaling $103,618.41.
 
 
 7
 On appeal, plaintiff raises the following issues:
 
 
 8
 I. Did the District Court err in dismissing Defendant physicians William H. Bentley, T. Scott Gilmer, John A. Myers and Western Neurological Group, P.C., and striking Defendant Hannelore Anderson, who was properly served and was part of a conspiracy to violate Plaintiff's constitutionally protected rights?
 
 
 9
 II. Did the District Court err in granting summary judgment to Defendants as to Plaintiff's Civil Rights claims when Plaintiff alleged a detailed factual basis and presented evidence to substantiate the allegations therein?
 
 
 10
 III. Did the District Court err in granting summary judgment to Defendants as to Plaintiff's claim of Fraud when Plaintiff alledged [sic] a detailed factual basis and presented uncontradicted evidence to substantiate the allegation therein?
 
 
 11
 IV. Did the District Court err in granting summary judgment to Defendants as to Plaintiff's claim of Intentional Infliction Of Emotional Distress when Plaintiff furnished the requisite factual basis for the allegaiton [sic] therein?
 
 
 12
 Appellant's Brief (in No. 93-1250) at 1.
 
 
 13
 [V.] Did the District Court err in refusing to grant Plaintiff's Motion to Transfer, Change Of Judge, and Motion And Additional Request For Recusal of Judge(s) when the evidence showed that the court displayed biased and prejudicial conduct against Plaintiff and in favor of the Defendants thereby making itself incompetent to make any ruling, including that of attorney fees?
 
 
 14
 [VI.] Did the District Court err in awarding defendants attorneys' fees and cost[s] when the evidence showed Plaintiff has not violated Rule 11?
 
 Appellant's Brief (in No. 93-1479) at 1.[4]
 
 15
 We address each of these issues in turn. Our standard of review of grants of a motion to dismiss for failure to state a claim and of summary judgment is de novo. Ash Creek Mining Co. v. Lujan, 969 F.2d 868, 870 (10th Cir.1992); Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). We review the district court's determination to strike Hannelore Anderson as a defendant, which we view as the court's reconsideration of its decision to allow plaintiff to amend his complaint because of his untimely service of her, for abuse of discretion. Ketchum v. Cruz, 961 F.2d 916, 920 (10th Cir.1992). We also review denial of a motion for recusal and award of attorney fees and costs for abuse of discretion. Willner v. University of Kan., 848 F.2d 1020, 1022-23 (10th Cir.1988), cert. denied, 488 U.S. 1011 (1989); White v. General Motors Corp., 908 F.2d 675, 678 (10th Cir.1990), cert. denied, 498 U.S. 1069 (1991).
 
 
 16
 Drs. Bentley, Gilmer, and Myers and Western Neurological moved for dismissal of plaintiff's medical malpractice claims on the basis that the claims required expert testimony to establish a prima facie case and plaintiff had failed to file certificates of review supporting the claims as required by Colo.Rev.Stat. 13-20-602. The district court agreed and dismissed these claims and dismissed the movants from the case. Plaintiff's primary contention is that no expert testimony is necessary to prove his malpractice claims:
 
 
 17
 Whether "the patient's [purported] cardiovascular accident, intracerebral hemorrhaging, coma, deteriorating neurological function, brain death, cerebral edema, resulting pressure on the brain stem, and eventual cardiopulmonary arrest, along with the [ ]proper resuscitative and supportive measures to deal with them" was the result of a hypertensive state, precipitated by a history of hypertension or a hypertensive state, precipitated by unsolicited drugs (i.e., barbiturates, morphine, cocaine, arsenic, inter alia ) are highly unsophisticated matters; A juror would understand that defendants' Myers and Gilmer representation of their inchoate (non)performance of toxicological screening (underscoring its significance) to determine what precipitated our belated father's hypertensive state was important to his medical treatment. Not underestimating the layperson, common sense dictates that in order to solve (properly treat) the problem, one must first know exactly what it is.
 
 
 18
 Appellant's Reply Brief (in No. 93-1250) at 4 (sic generally). We find this and plaintiff's remaining contentions on this issue frivolous. We agree with the district court that expert testimony would be required to prove plaintiff's claims and affirm its dismissal of these claims for substantially the same reasons stated in its March 23, 1993 order.[5]
 
 
 19
 The district court approved a stipulation between the parties establishing December 29, 1992, as the deadline for joining any additional parties. On December 22, plaintiff moved to add certain new defendants. The court allowed plaintiff until January 8, 1993, to file an amended complaint and directed him to expeditiously serve the new defendants. Plaintiff filed an amended complaint on January 7 that included Hannelore Anderson, among others, as a new defendant. However, he did not serve her until March 20, which was five days after the cutoff for written discovery and less than two months before the deadline for all discovery and for filing dispositive motions. The court granted the defendants' motion to strike her as a defendant on the basis that plaintiff's failure to serve her expeditiously prejudiced both her and the existing defendants.
 
 
 20
 On appeal, plaintiff's only argument is that "I served process as expeditiously as I could under the circumstances (Doc. 68)." Appellant's Brief (in No. 93-1250) at 8. Document 68 is his response to defendants' motion to strike, which says nothing about the circumstances preventing more expeditious service. The response only states that he was not served with defendants' motion. Again, plaintiff's argument is frivolous. The district court did not abuse its discretion in striking Hannelore Anderson as a defendant.
 
 
 21
 In its June 11, 1993 order regarding dispositive motions, the district court fully explained the variety of reasons--primarily legal as opposed to factual--for granting summary judgment to defendants on plaintiff's civil rights claims. For example, it stated that neither 42 U.S.C.1981 nor 1982 provided causes of action for the type of discrimination plaintiff alleged, which apparently was unequal treatment with regard to hospital visitation periods. It stated that plaintiff failed to establish any state action to justify his 1983 claim. In response to plaintiff's contention that state regulation of the hospital made it a state actor, the court correctly relied on Ward v. St. Anthony Hospital, 476 F.2d 671, 675 (10th Cir.1973), in determining that mere state regulation of or financial assistance to private hospitals does not make them state actors. The court also determined that plaintiff failed to allege his 1985(3) claim of conspiracy with any particularity.
 
 
 22
 On appeal, plaintiff essentially ignores the legal shortcomings of his civil rights claims. He merely states that there were genuine issues of fact precluding summary judgment. We agree with the district court that plaintiff fell woefully short of substantiating his civil rights claims, and affirm its grant of summary judgment on these claims for substantially the same reasons it stated in its June 11 order.
 
 
 23
 Plaintiff's fraud claim is based on his allegation that no autopsy was performed on his father and that the autopsy report was fabricated. In granting summary judgment, the district court stated that plaintiff did not represent his father's estate[6] and had no standing to assert this claim and that he had presented no legitimate facts indicating that the autopsy had not been performed. As he did in the district court, plaintiff contends that a mystery videotape of his father lying in his casket proves that no autopsy was performed. Though he often alluded to it, plaintiff never furnished a copy of this videotape to the district court. He has apparently submitted a copy of the videotape to this court, attached to his response to defendants' motion to strike other materials he filed in this court that he had not submitted to the district court. We do not consider evidence not presented to the district court. The district court was correct in granting summary judgment on the fraud claim.
 
 
 24
 In response to defendants' summary judgment motion on plaintiff's claim for intentional infliction of emotional distress, plaintiff's only "fact-related" response was this:
 
 
 25
 The defendants acts between September 13-15, 1990 were intentional and caused me severe emotional distress. Moreover, the defendants, and others, abused their police power in restricting and precluding my visitation of our father and under the circumstances, the defendants' mistreatment of me was blatant and severe.
 
 
 26
 R. Vol. I (in No. 93-1479), doc. 81 at 16. The district court concluded that "[p]laintiff has simply failed to do anything more than set out the name of the claim." June 11 order at 21. We agree. Summary judgment on this claim was proper.
 
 
 27
 A week after the district court granted summary judgment and dismissed the case, plaintiff filed a motion to transfer the case to the United States District Court for the District of Georgia on the basis that the court had been unfair to him and that he "feels that he cannot receive a fair and impartial hearing if this action remains in Colorado." R. Vol. II (in No. 93-1479), doc. 103 at 1. After the district court denied this motion, plaintiff filed a motion for reconsideration and for a change of judge. After this motion was denied and the magistrate judge issued his recommendation that plaintiff be sanctioned by paying defendant's attorney fees and expenses, plaintiff filed a motion requesting that both the district court and magistrate judges recuse themselves. Because this motion was similar to the previous ones in that it contained only conclusory allegations of bias and irrelevant statements, it also was denied. Unbelievably, plaintiff appeals the denial of these motions.[7] For obvious reasons, he cites no authority for a plaintiff being able to choose a forum, lose on the merits, and then have the case transferred to another court--where venue and personal jurisdiction over the defendants is doubtful--so he can start the process anew. The district court correctly denied these motions.
 
 
 28
 Adopting the magistrate judge's recommendation, the district court sanctioned plaintiff by ordering him to pay defendants' attorney fees and expenses totaling $103,618.41. The court found the sanction appropriate under both Fed.R.Civ.P. 11 and 42 U.S.C.1988 because "the Plaintiff filed a frivolous complaint, with no legal or factual basis; because he engaged in abusive, dilatory, and deceptive litigation practice; and because his conduct was willful and malicious." R. Vol. II (in No. 93-1479), doc. 133 at 3. On appeal, plaintiff's only real argument--in addition to his conclusory statements about the merits of his claims and the district court's bias--is that Rule 11 was amended effective December 1, 1993, and that its test for sanctions has been changed and it no longer covers sanctions for discovery violations. Plaintiff ignores his own correct statement that these changes to Rule 11 were effective beginning in December 1993. The district court issued its sanction order on November 24, 1993, for conduct that occurred prior to the effective date of the rule changes. Plaintiff has not shown that the court abused its discretion in awarding the sanctions.
 
 
 29
 We have considered plaintiff's other contentions and find them unpersuasive. Plaintiff's motion to proceed in forma pauperis in No. 93-1250 is GRANTED. All other outstanding motions are DENIED. The judgment of the United States District Court for the District of Colorado is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 **
 Honorable David L. Russell, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation
 
 
 [2]
 Around the same time, plaintiff and several of his siblings went to the house where his father and stepmother lived to search for evidence of the alleged poisoning. As a result of activities that occurred at the house, plaintiff filed a separate suit alleging civil rights and other claims against his stepmother, the City of Aurora and several city police officers. We affirmed dismissal of that action in Anderson v. City of Aurora, No. 93-1372 (10th Cir. June 3, 1994)
 
 
 [3]
 Plaintiff has represented himself throughout this case, but he is not a layman. He is a law school graduate and apparently a licensed attorney in the State of Georgia. We therefore do not construe his filings and arguments liberally as we would a typical pro se plaintiff. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991)
 
 
 [4]
 Plaintiff also included these last two issues in slightly different form in No. 93-1250
 
 
 [5]
 To the extent that plaintiff challenges the district court's dismissal of his other claims against Drs. Bentley, Gilmer and Myers and Western Neurological, we construe the court's March 23 order as sua sponte dismissing these claims for failing to state a cause of action. A court may do so when it is clear that the plaintiff cannot prevail on the facts alleged and amendment of the complaint would be futile. Gregory v. United States/United States Bankruptcy Court, 942 F.2d 1498, 1500-01 (10th Cir.1991), cert. denied, 112 S.Ct. 2276 (1992); Hall, 935 F.2d at 1109-10. Moreover, as we stated earlier, plaintiff is an attorney, and his pleadings are not entitled to a liberal construction. Considering his pleadings and the invalidity of the same claims against the remaining defendants, we see no error in the district court's sua sponte dismissal
 
 
 [6]
 Plaintiff's father's will appointed Hannelore Anderson as personal representative of his estate. In a state court action, plaintiff requested her removal as personal representative for several reasons including his contention that she had murdered his father. He lost
 
 
 [7]
 He also has moved this court to transfer the appeal to the Eleventh Circuit, or in the alternative, to hear argument by telephone. This motion is denied