2007 OK 45

Jeffrey J. SMITH, M.D.,
Plaintiff/Appellant,

v.

DEACONESS HOSPITAL; Deaconess Health System, LLC, Triad Hospitals, Inc. and Deaconess Health Care Corporation d/b/a Deaconess Hospital; Kenneth Whittington, M.D.; Paul Dougherty; Susan M. Harmon, M.D.; Philip R. Palmer, M.D.; Matthew T. Draelos, M.D.; Ingrid W. Jackson, M.D.; Paul D. Rothwell, M.D.; William J. Fors, M.D.; Wade McCoy, M.D.; Joey D. Fowler, M.D.; Jerry Brindley, Jr., M.D.; Susan

Hakel, M.D.; Jesse S. Little, Jr., M.D.; Jerry B. Vannatta, M.D.; Ted Clemens, Jr., M.D.; Larry Mills; David Houston; Joseph D. Powers, M.D.; and Unidentified Members of the Credentialing Committee, Defendants/Appellees.

No. 103,876.

Supreme Court of Oklahoma.

May 29, 2007.

Linda G. Scoggins and Melinda J. Martin, Scoggins and Cross, PLLC, Oklahoma City, OK, for Appellant.

John N. Hermes, Michael F. Lauderdale and Mark D. Folger, McAfee & Taft, P.C., Oklahoma City, OK, for Appellees.

HARGRAVE, J.

¶ 1 Jeffery J. Smith, M.D., is a gynecological oncologist and surgeon licensed to practice medicine and surgery in the state of Oklahoma and has been so licensed since 1983. In 1985, Smith became a member of Deaconess' medical staff and practiced there with full medical and surgical privileges until February 26, 2006, when the Hospital revoked his privileges.

¶ 2 In a letter dated November 12, 2002, Deaconess requested Smith to submit the required paperwork for renewal of privileges to the hospital. Also around this time, sixteen (16) charts of former patients of Dr. Smith were singled out for review. These charts were forwarded to Permedion, a quality review organization in Ohio. These sixteen (16) charts had previously been reviewed and passed by the hospital's quality improvement subcommittee. The report of Permedion, which is nowhere to be found in the record, supposedly states that Dr. Smith's surgical abilities were above average and that he did not perform below the standard of care. The report also allegedly did not recommend any loss of privileges. This report was apparently not signed by a reviewing physician and was at all times treated as an anonymous review.

¶ 3 On May 14, 2003, Deaconess' Hospital Credentialing Committee recommended denial of Smith's reappointment based on the anonymous Permedion report. This recommendation was then affirmed by Deaconess' Medical Executive Committee on May 19, 2003. At this point, Dr. Smith received notice on May 21, 2003, and requested a hearing on June 18, 2003.

¶ 4 A two-day hearing took place before a Fair Hearing Panel on August 27 and 28, 2003, made up of three outside physicians who had no affiliation with Deaconess. Smith states that he objected to two of the members of the hearing panel because of perceived bias. Both were appointed over Smith's objections. A transcript was made of this hearing but is not found in the appeal. The Fair Hearing Panel agreed with the Medical Executive Committee's determination in a report dated September 11, 2003. Dr. Smith was not at any time allowed to cross-examine the writer of the Permedion report, the basis for the denial of his reappointment, despite his repeated requests to do so.

¶ 5 Dr. Smith then appealed the Fair Hearing Panel's determination to Deaconess' Board of Directors. An appellate hearing took place on October 27, 2003, and Deaconess' Board, through an appointed committee, affirmed the recommendation of the Fair Hearing Panel. Dr. Smith received the report of the Appellate Review Committee on December 5, 2003. Smith states that, under the Hospital's Fair Hearing plan, not part of the record except for a one-paragraph excerpt, the full board of directors was to render a final decision in writing within ten (10) days of the conclusion of the appellate review process or thirty (30) days if the Board's decision is contrary to the recommendation of the Hearing Panel. After repeated requests from Smith, the Board of Directors did not notify Smith until December 17, 2004, that the Appellate Review Committee's report was the final decision and that there would be no final decision from the entire board. However, during this time frame, the hospital reported to the National Practitioners Data Bank that Smith's application for clinical privileges had been denied. As a result of the reporting of his loss of privi-

leges at Deaconess, prior to a full report of the Board of Directors, Smith failed to notify this loss of privileges to other hospitals, which resulted in the automatic relinquishment of privileges at those hospitals. Smith was left with privileges at one Oklahoma City hospital.

¶ 6 On December 2, 2005, Smith filed a lawsuit against Deaconess, its then President, its Vice–President of Medical Affairs, practically every member of the Credentialing Committee, the Medical Executive Committee, the Fair Hearing Panel, and the Appellate Committee. On June 16, 2006, the trial court granted the Defendants' motion to dismiss the lawsuit "on the grounds, among others, that the Defendants are entitled to qualified immunity."

¶ 7 The issue presented in this retained appeal is whether, under Oklahoma law, peer review actions are immune from judicial review and the participants entitled to qualified immunity.

¶ 8 In *Ponca City Hospital, Inc., v. Murphree*, 1976 OK 4, 545 P.2d 738, the plaintiff, claiming a denial of due process, sought a mandatory injunction compelling reinstatement of his privileges at the defendant hospital. The issue in *Murphree* was "whether the action of a private hospital in revoking staff privileges of a physician is subject to judicial review." *Ponca* at ¶ 1, 545 P.2d at 738. The plaintiff had been a physician in the radiology department of the hospital for nearly twenty years when the hospital's board of trustees revoked his staff privileges because of alleged disruptive activities and the difficulty which radiology personnel experienced in working with him. The plaintiff sued the hospital, seeking both a temporary and a permanent injunction. The trial court asserted jurisdiction and issued the injunctions. The hospital appealed to this Court.

¶ 9 The plaintiff argued that the hospital bylaws constituted a contract between him and the hospital and that the revocation of his privileges amounted to a breach of that contract. He also argued that the receipt of public funds and the use of a trust naming the City of Ponca City as beneficiary made any action taken by the hospital state action. This Court disagreed, explaining, "there must be causal connection between the state conduct or involvement and the injury complained of. State action and thus jurisdiction does not arise merely because private hospitals or other institutions receive governmental aid." *Ponca* at ¶ 16, 545 P.2d at 740. This Court held that "there is no judicial review of Hospital's termination of plaintiff's staff privileges, absent either a showing of a causal relationship between the state's activity and the activity causing the injury, or a claim of discrimination because of race, sex or age." *Ponca* at ¶ 22, 545 P.2d at 742. Because the hospital's actions were not subject to judicial review, this Court did not reach the contract issue. *Ponca* at ¶ 24, 545 P.2d at 742.

¶ 10 Subsequent to our opinion in *Ponca*, the Oklahoma State Legislature has passed legislation dealing with this same issue. In 1987, Oklahoma passed the Professional Review Bodies—Protection From Liability Act. 76 O.S.2001 § 25 provides:

A professional review body, members and staff of such professional review body and persons who contract with such professional review body shall not be liable in any way in damages under any law of this state with respect to a professional review action taken in good faith by such professional review body.

76 O.S.2001 § 28 provides:

Protection from liability pursuant to Section 6 of this act *(Title 76, § 25)* shall be available only on the condition that the professional review action is taken or recommendation is made under the following requirements:

A. The action is taken:

1. In reasonable belief that it will maintain or enhance the quality of professional standards of conduct or competence;

2. After reasonable effort to obtain facts pertinent to the matter;

3. After adequate notice and opportunity to be heard are afforded the professional involved; and

4. In reasonable belief that the facts warrant the action.

B. The notice required in paragraph 3 of subsection A of this section must:

1. State that a professional review action has been proposed against the professional;

2. Inform the professional, in detail sufficient for him to prepare a defense, of the reasons for the proposed action;

3. State that the professional may request a hearing whether he has been previously contacted about the proposed action or complaint on which it is founded or not;

4. Inform the professional of the time limit of not less than twenty (20) days in which he must request a hearing or lose such right;

5. Explain the hearing procedure that will be used or the choice of the procedures available for the professional's choice if a hearing is requested; and

6. State that if a choice of hearing procedures is available, the professional must choose at the time he requests the hearing.

C. If the affected professional requests a hearing on a timely basis, the professional review body must give the professional notice of no less than ten (10) days before the hearing of the place, time and date of the hearing, of the witnesses expected to be called against him, and of the exhibits expected to be used against him.

D. At the option of the professional review body, the hearing may be held before:

1. An arbitrator mutually acceptable to the professional and professional review body;

2. A hearing officer appointed by the professional review body provided the hearing officer in not in direct economic competition with the affected professional;

3. A panel of individuals appointed by the professional review body provided the individuals are not in direct economic competition with the affected professional; or

4. The entire professional review body.

E. The professional shall:

1. Have the right to be represented by legal counsel at any stage of the proceedings;

2. Have the right to have a record made of the hearing proceedings, copies of which may be obtained by the professional upon payment of reasonable fees set by the professional review body;

3. Have the right to call, examine and cross-examine witnesses;

4. Have the right to present evidence on his behalf which the arbitrator, hearing officer or chairman of the hearing panel determines is relevant;

5. Have the right to submit a written statement at the conclusion of the hearing;

6. Forfeit his right to a hearing if he fails without good cause shown to attend a properly scheduled hearing for which proper notice has been mailed by certified United States mail, return receipt requested; and

7. Receive a written statement explaining the action or decision not to act of the professional review body. *(Italicized text added for clarity)*

By the terms of this act, there is no blanket immunity to peer review bodies. However, the peer review body will be protected from damages liability if all of the requirements of 76 O.S.2001 § 28 are met. We find that 76 O.S.2001 § 24 et seq. does not provide immunity from suit, but rather a defense to liability. If the peer review board meets all of the requirements of 76 O.S.2001 § 28, it will be protected from liability damages. However, the immunity once enjoyed by private hospitals under the common law, has been superseded by this statute.

¶ 11 The 10th Circuit Court of Appeals faced a similar situation in *Decker v. IHC Hospitals, Inc.*, 982 F.2d 433 (10th Cir.1992). In that case, the defendants moved to dismiss the complaint based upon immunity under the Health Care Quality Improvement Act of 1986 (HCQIA), 42 U.S.C. § 11101 et seq. This statute is very similar to Oklahoma's 76 O.S.2001 § 24 et seq. The Tenth Circuit dismissed the appeal of the order denying the motion to dismiss finding lack of appellate jurisdiction and concluding that HCQIA provides qualified immunity from liability in damages only, and does not provide immunity from suit. The Tenth Circuit concluded that a participant in a peer review

action could be denied protection of immunity by failing to comply with the affirmative requirements of HCQIA. 982 F.2d 433, 436–7.

¶ 12 In the present matter, the trial court granted defendants' motion to dismiss on the sole ground that the defendants were entitled to qualified immunity. Defendants are entitled to qualified statutory immunity from liability—not from suit—if they show the Board's compliance with all the statutory conditions. That has not yet occurred. We therefore reverse the dismissal and remand the cause to the trial court for further proceedings.

## JUDGMENT OF THE TRIAL COURT REVERSED; REMANDED FOR FURTHER PROCEEDINGS

¶ 13 ALL JUSTICES CONCUR.